**Eli S. GREGORY, suing for himself and on behalf of all other citizens and taxpayers of the City of Lewisport, Kentucky, similarly situated, Appellant,**

**v.**

**CITY OF LEWISPORT, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

June 28, 1963.

As Modified July 16, 1963.

Woodward, Bartlett & McCarroll, Owensboro, for appellant.

Bratcher, Rummage & Beard, Sandidge, Holbrook, Craig & Hager, Owensboro, Maxwell H. Elliott, Torrance, Cal., for appellees.

CULLEN, Commissioner.

A citizen and taxpayer of the City of Lewisport, Kentucky, appearing on behalf

of himself and others similarly situated, joined with the city and with Harvey Aluminum, Incorporated, in submitting to the circuit court, under the procedure provided for in KRS 418.020, seventeen questions concerning the validity of various aspects of a project designed to conform with KRS 103.200 to 103.280, for acquisition by the city of an industrial plant to be leased to Harvey Aluminum and to be financed through revenue bonds. The circuit court entered judgment answering each of the questions favorably to validity. The citizen and taxpayer has appealed.

■ Three of the questions raised (A, B and H), namely, whether the transaction would create claims against the city without express authority of law in violation of Section 162 of the Constitution, whether the financing plan in general represents an unlawful lending of credit of the city in violation of Section 179 of the Constitution, and whether the project is for a private purpose rather than a public one, properly were answered in the negative by the circuit court, on authority of Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80, Bennett v. City of Mayfield, Ky., 323 S.W.2d 573, and Norvell v. City of Danville, Ky., 355 S.W.2d 689. As far as these three questions are concerned the issues are the same as in the three cited cases, so no further discussion of them is required.

■ The project here involved contemplates that Harvey Aluminum will construct the plant and that the city will pay the construction costs, in stages as the work progresses, from the proceeds of the bonds. A question (F) is raised whether this plan for progress payments constitutes an unlawful lending of the credit of the city. In our opinion the plan for payment of the purchase price in stages as the construction work progresses does not involve a lending of the city's credit any more than would a plan (such as approved in the cases hereinbefore cited) for payment of the entire purchase price upon completion of the construction. In either case the payments are to be made solely from the bond proceeds and no resources of the city are pledged.

■ Another question (E) is whether the plan for making progress or stage payments during construction is within the statutory authority, KRS 103.210, to acquire an industrial building "either by purchase or construction." It is argued by the appellant that the statute authorizes only an outright purchase of a complete building or the construction of the building by the city itself. We think a purchase through a progress-payment plan is a purchase within the literal meaning of the statute, and we believe it does not violate the spirit of the statute. The appellant argues that the plan will give the city no control or supervision over the construction work and no means of checking the costs, so there is no assurance that the building will be worth the price paid. However, we think there is as much assurance of getting full value under the proposed plan as in a case where the city buys a completed building.

■ The progress-payment plan gives rise to another question (C): Is the plan an invalid device to evade statutory requirements for advertisement for bids for construction work by cities and for the payment of prevailing wages on public works projects? Perhaps it would not be acceptable for a city to contract, before commencement of construction, to buy a building upon its completion, if the only purpose of the plan were to escape statutory regulations governing construction of buildings by cities. But here the plan has a legitimate purpose—to insure that the building will conform to the requirements of the lessee for whose use the building is designed. We think the statutes in question are aimed primarily at construction of buildings for *public use*, so when, as in the case here, a building is being acquired for use of private industry the courts should not search for possible motives of evasion.

in the plan for acquisition of the building if the plan does not literally violate the statutes and if it has an apparent legitimate purpose.

The financing plan provides for the designation of an out-of-state bank as escrow agent. The proceeds of the sale of the bonds will be deposited with the agent and disbursed by it. The plan further provides for appointment of an out-of-state bank as trustee of the revenue bond sinking fund. The rentals from Harvey Aluminum will be paid to the trustee and applied by it to retirement of the bonds. The bank named as agent or trustee must have a combined capital and surplus of over $50 million (the amount of the proposed bond issue). The trustee is to be given irrevocable power to accept on behalf of the city all notices, deeds, bills of sale and policies of title insurance. The lease with Harvey Aluminum may be terminated only with the written consent of the trustee, and any new lease or re-lease must be approved by the trustee. Furthermore, the city will agree to be bound by the determinations made by the trustee with regard to any reports, certificates or opinions furnished to the trustee pursuant to the provisions of the lease contract.

■ Several questions are raised with reference to the foregoing provisions. The first (D) is whether a foreign bank not authorized to do business in Kentucky may act as a depository for a Kentucky city. Admittedly there is no express statutory prohibition against a foreign bank's acting as such a depository. The fact that designation of a foreign depository, at least in revenue bond transactions, is not against a legislative policy is shown by the provision of KRS 162.540(10) expressly authorizing the naming of an out-of-state bank as depository in connection with certain revenue bond issues for school projects. The funds here involved consist of money borrowed by the city, on security of the industrial building and the rents to be derived from it, for the purpose of paying for the building. The purpose of using a depository or escrow agent is to protect the bondholders rather than the city. Any considerations of policy that might dictate the selection of a domestic depository for city funds are not present here because the funds in question are not really city funds. The function of the depository will be to see that the borrowed money is used for the purpose for which it was borrowed and we think it is proper to designate a foreign bank for that purpose. Practical reasons for such designation are that no bank in Kentucky has a combined capital and surplus as great as the amount of the proposed bond issue, and the larger banks in the major financial centers of the country have a reputation and experience in the bond market that facilitates the handling of transactions of this nature.

■ A second question (G) is whether an out-of-state bank may validly be designated as trustee. The applicable considerations on this question are substantially the same as on the question of the depository. The function of the trustee is to protect the bondholders, who will have a first claim on the rentals. Their interests do not require that the trustee be a Kentucky institution. The appellant argues that under KRS 395.005 only a bank or trust company incorporated under the laws of this state may be a "fiduciary," but this statute applies only to "fiduciaries" as defined in KRS 395.001, which are confined to those appointed by or under the control of or accountable to the county court.

■ A third question (I) is whether the provisions hereinbefore mentioned as to the powers of the trustee constitute an unlawful delegation of discretionary power of the city. Under the decision in Commonwealth v. Associated Industries of Kentucky, Ky., —— S.W.2d ——, delegations of power are allowed considerable latitude. But even without regard to that decision we think there actually is no delegation of power here. The city is in the position of a bor-

*rower,* and the provisions in question are standard for borrowing transactions. A borrower usually has to surrender some of his rights in order to protect the lender. The city here is not surrendering any *governmental* powers. What are involved are simply details of a proprietary transaction.

With respect to the other questions submitted to and decided by the circuit court (J, K, L, M, N, O, P and Q) the appellant makes no argument.

Since no issue has been raised on this appeal with respect to the latter questions it is unnecessary for us to discuss them. We affirm the judgment answering these questions favorably to validity.

The judgment is affirmed.