James E. WHITE et al., etc., Appellants,

v.

**CITY OF HICKMAN, Kentucky, etc.,**
Appellee.

Court of Appeals of Kentucky.

May 19, 1967.

John C. Bondurant, Hickman, for appellants.

Brantly D. Amberg, Hickman, Jo M. Ferguson, Grafton, Ferguson, Fleischer & Harper, Louisville, for appellee.

PALMORE, Judge.

The City of Hickman on December 30, 1966, enacted an ordinance authorizing the issuance of $3,600,000 in industrial revenue bonds to finance the acquisition and completion of a manufacturing plant. KRS 103.200 et seq. This is a declaratory judgment suit brought by the city against representative citizens and taxpayers to confirm the legality of the ordinance and of the bonds to be issued pursuant to it. The defendant parties appeal from a judgment declaring the project valid.

The total cost of the plant will approximate $12,000,000. Construction began in 1965 and was about 90% completed when the ordinance was enacted in December of 1966. Thus far it has been financed by the Carborundum Company, which will convey the facilities to the city and occupy them under a 20-year lease with four 5-year renewal options. The bonds are payable solely out of the rent, and are to be liquidated over the 20-year primary term of the lease. The company will have, in substance, the right to repurchase the property at any time after 1971 for $2,000 plus the amount required to pay off the balance (if any) of the bond indebtedness and incidental costs.

The first question presented on appeal is whether Manning v. Fiscal Court of Jefferson County, Ky., 405 S.W.2d 755 (1966), applies. We agree with the trial court that it does not.

The proposal in *Manning* was held invalid because there was not a satisfactory or sufficient showing that the construction of Fontaine's plant had been induced by assurances of public financing. In this case it is clear that the proposed bond issue was a key factor from the beginning, and was deferred until a rather late stage of the construction work only by reason of the circumstance that Carborundum found it necessary or desirable to put up a major share of the total investment itself.[1] On October 5, 1964, the legislative body of the city adopted a resolution purporting to authorize the Hickman Development Corporation, a nonprofit organization created for the purpose of securing industry, to act as its agent and "to negotiate to conclusion, consummation and finality such lease agreements as may be or may become necessary or expedient between the City * * * and any prospective, industrial development or manufacturer," etc. While this resolution may be of questionable legal efficacy, it has value from an evidentiary standpoint. It is often necessary that negotiations of this type be kept confidential until the vital decisions are made, for which reason they cannot be memorialized from day to day in the form of official actions by public agencies. There was ample proof that Carborundum proceeded with construction of the plant on the basis of a reasonable and good faith assumption that the project could and would be financed in part by a revenue bond issue under the statutes here in question. It is our opinion that the inducement was enough to satisfy the objections held fatal in *Manning*.

Substantial evidence was adduced to show that the proposed undertaking will alleviate conditions of unemployment in the Hickman area and will encourage the increase of industry in this state. The trial court so found. Hence the requisite conditions set forth in KRS 103.210 have been met.

The only other contention advanced by the appellants is that the proposed method of disbursing the proceeds of the bond issue amounts to an unlawful delegation of its legislative body's discretionary power and responsibility. Fair consideration of this point requires a brief outline of the way in which the money is to be expended.

By an agreement made in August of 1965 Carborundum engaged National Factory Locating Service, an engineering firm headquartered at Memphis, Tennessee, to prepare plans, specifications and contract documents, assist in the awarding of contracts, and supervise construction of the project. In the bond ordinance of December 30, 1966, National is designated as the city's engineer in the same capacity described in that contract, the city assumes payment of National's fee, and the mayor is authorized to execute a contract with National "in form satisfactory to the City Attorney."[2] The ordinance directs ultimate payment of the engineer's fee and the fee of Stein Bros. & Boyce, theretofore appointed as fiscal agent, solely from the proceeds of the bond issue.

When the bonds are sold, the mayor and city treasurer are authorized and directed forthwith to pay out of the proceeds the fiscal agent's fee and, upon conveyance of the property by Carborundum to the city,

1. Presumably, an attempt to sell the bonds at the beginning of construction would be less feasible than at a later stage when the proceeds are sufficient to assure completion of the job.

2. On the premise that any broader meaning would amount to an unlawful delegation, we construe this provision as authorizing no more than an assumption of Carborundum's rights and obligations under the pre-existing contract, which was introduced as a part of the evidence in this proceeding.

the cost of the site.[3] The balance must be deposited with Citizens Fidelity Bank and Trust Company, of Louisville, Kentucky, as trustee. That portion representing accrued interest becomes part of a sinking fund provided for retirement of the bonds on schedule.[4] The balance is designated as a construction fund and is to be paid out by the trustee on a "progress-payment" basis as approved by this court in Gregory v. City of Lewisport, Ky., 369 S.W.2d 133 (1963). Such payments may be made only with the approval of the engineer and city treasurer, and they may be made in reimbursement of expenditures theretofore made by Carborundum under its construction contracts, subject to a guaranty by Carborundum that the facilities will be completed in accordance with the plans and specifications.[5]

Thus it may be seen that the interests of both the city and the bond purchasers are secured by the integrity of the engineer, the trustee, and a responsible manufacturing company, and provision has been made to assure against the money's being expended on a project that may not be completed. Indeed it would seem probable that the job will be done by the time any of it is paid out, in which event the entire construction fund may become payable at once to Carborundum by way of reimbursement.

As pointed out in Gregory v. City of Lewisport, Ky., 369 S.W.2d 133, 136–137 (1963), by submitting to the protective procedures reasonably required of a borrower the city does not surrender any governmental powers. "What are involved are simply details of a proprietary transaction." Ibid. Although the city has an obligation of good faith to the bondholders, they are the parties most interested in and affected by the manner in which the money is handled, and we take it for granted that no one would contend the bondholders would prefer to have it handled by the city council than by a professional fiduciary institution operating under the protective banking statutes. We find no improper delegation of authority or responsibility of the city.

The proposed lease agreement recites that the parties interpret the law as exempting the leased property, including the leasehold estate, from ad valorem taxation, which factor has been a material inducement in Carborundum's decision to enter into the contract. See KRS 103.285. However, simple candor prompts an admonition that thus far the question has not been and it is not now so decided.

The judgment is affirmed.

All concur.

---

3. Purchased by the Hickman Development Corporation in 1964 and transferred to Carborundum in 1965.

4. The sinking fund is otherwise derived from the lease revenues, which are payable directly to the trustee.

5. In its contract with the city Carborundum has agreed that it will pay all costs of the project in excess of the amount available from the bond proceeds.