## 18711

Karl E. NEUSSNER, Appellant, v. Robert E. McNAIR, Governor of the State of South Carolina *et al.*, Respondents.

(157 S. E. (2d) 410)

*W. W. Wilkins, Esq.*, of Greenville, *for Appellant,*

*Messrs. E. P. Riley and Haynsworth, Perry, Bryant, Marion & Johnstone*, of Greenville, *Daniel R. McLeod,*

*Attorney General, and Joesph C. Coleman, Assistant Attorney General,* of Columbia, *and Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

October 10, 1967.

Moss, Chief Justice.

This action is one under the "Uniform Declaratory Judgments Act", Sections 10-2001 *et seq., 1962* Code of Laws, brought by Karl E. Nuessner, the appellant herein, a taxpayer of Greenville County, South Carolina. The purpose of the action was to determine the constitutionality of the recently enacted Industrial Revenue Bond Act and its applicability to the projects of the respondents, Phillips Fibers Corporation, hereinafter referred to as Phillips, and Oxford Industries, Inc., hereinafter referred to as Oxford. The appeal here is from a decree entered by the Court of Common Pleas for Greenville County, upholding the constitutionality of the Act and that the projects heretofore referred to could be financed by revenue bonds issued pursuant to said Act. There are no factual issues involved and the matters to be determined are questions of law. However, a brief resume of the facts is hereinafter stated.

At the time of the commencement of the present action, the appellant challenged the constitutionality of the Industrial Revenue Bond Act. After the commencement of this action, this Court in the case of *Elliott v. McNair,* S. C. 156 S. E. (2d) 421, filed July 14, 1967, upheld the constitutionality of the Act with respect to projects begun after the passage of the Act, thereby disposing of several

issues raised by the pleadings in this case. Our opinion in the Elliott case, however, did not decide the applicability of the Act with respect to projects begun prior to the passage of the Act or the effective date thereof. The Act was passed on March 21, 1967, with an effective date of January 1, 1967.

Phillips and Oxford announced their intention to construct and operate new manufacturing enterprises in Greenville County during the latter part of 1966. Each purchased land and commenced construction of the respective plants during the last months of 1966. However, neither company had completed the construction of their respective plants on January 1, 1967, nor on March 21, 1967. On the effective date of the Act, neither Phillips nor Oxford had arranged permanent financing for their projects. The record reveals that temporary financing of the construction of the projects had been obtained and it was contemplated that Industrial Revenue Bonds for permanent financing of the construction of such projects would be used when available.

It appears that Phillips and Oxford, after considering a number of possible locations in the textile producing area of the Southeastern United States, had numerous conferences with the officials of the State Development Board and Greenville County concerning the location of their industrial plants in Greenville County, and being assured that these agencies would sponsor and support the enactment of legislation by which said county would be authorized to issue Industrial Revenue Bonds for the purpose of constructing or otherwise acquiring industrial facilities for the use and occupancy of industrial enterprises and, acting upon such assurances, Phillips and Oxford decided to locate their respective plants in Greenville County and purchased appropriate sites for their respective projects, anticipating reimbursement for the cost of such industrial facility from the proceeds of Indusrtial Revenue Bonds to be issued by Greenville County pursuant to what is now the Industrial Revenue Bond Act.

The County of Greenville, in March 1967, prior to the passage of the Industrial Revenue Bond Act, entered into contracts with Phillips and Oxford agreeing subject to the enactment of the aforementioned legislation and the approval of such by the Court, to issue its Industrial Revenue Bonds in the approximate amount of $6,000,00.00 and apply the proceeds therefrom to the payment of the cost of constructing or otherwise acquiring the industrial facility of Phillips, and the issuance of $500,000.00 Industrial Revenue Bonds and apply the proceeds therefrom to the payment of the cost of constructing or otherwise acquiring the industrial facility of Oxford. It further appears that Phillips and Oxford, in order to avoid the delay attendant upon the enactment of such legislation and the issuance of Industrial Revenue Bonds by Greenville County, agreed to proceed with the construction of their respective projects under temporary financing, with the understanding that upon the issuance of said Industrial Revenue Bonds, Greenville County would purchase the industrial facility from the proceeds of said bonds.

The Legislature has found that the Industrial Revenue Bond Act was for a public purpose and thus a proper function of government. Here, the officials of Greenville County have found as a fact that the issuance of Industrial Revenue Bonds by said county in order to finance the projects of Phillips and Oxford would promote the industrial development of the county and improve the welfare and economy of the county by furnishing employment to a number of its residents. The appellant does not challenge this finding.

The question for decision here is whether it was the intention of the Legislature that the benefits of the Act were available to industries which might have located in South Carolina prior to the passage and effective date of said Act but whose projects were not then completed or financed. This question must be resolved by the provisions of the Act itself.

Section 3 of the Act provides that a county, through its governing body, shall have the following powers:

"(1) To acquire, and, in connection with such acquisition, to enlarge, improve and expand, whether by construction, purchase, gift or lease, one or more PROJECTS which shall be located within the County except that as to a PROJECT located in more than one county, the same may be acquired jointly by the COUNTY BOARDS of the counties wherein the said PROJECT shall be located; (2) To lease to others any or all of its PROJECTS for such rentals and upon such terms and conditions as the COUNTY BOARD may deem advisable and as shall not conflict with the provisions of this act; and (3) To issue revenue bonds for the purpose of defraying the cost of acquiring, by construction and purchase, and in connection with any such acquisition, to enlarge, improve and expand any PROJECT, and to secure the payment of such bonds, all as hereinafter provided."

The projects of Phillips and Oxford are such as are described in Section 2 of the Act and such is admitted by the pleadings in this case.

In the decree of the lower court it was found:

"* * * that the South Carolina Department of Development had offered on behalf of Greenville County to sponsor or support the enactment of industrial revenue bond legislation, and Phillips and Oxford in anticipation of the adoption of such legislation and the issuance of the aforesaid bonds by Greenville County, and acting upon assurances of the State Department of Development, purchased appropriate sites within Greenville County for their plants, anticipating one means of reimbursement therefor as being from proceeds of revenue bonds to be issued by the County pursuant to said legislation."

It follows that the assurances given by the State Department of Development is what influenced Phillips and Oxford to locate their industrial plants in Greenville County and to commence the construction of same with interim financing.

The recitals in the contracts made by Greenville County with Phillips and Oxford confirm the foregoing. There was no evidence offered by the appellant to the contrary and his contention that the availability of industrial revenue bond financing was not the inducing factor in the location of their plants in Greenville county is not supported by the record.

We conclude that the proposed plants of Phillips and ▌ Oxford are projects within the meaning of the Act and the acquisition of these industrial plants through the issuance of Industrial Revenue Bonds would promote the industrial development and the public welfare of Greenville County as prescribed by the Legislature in the Act. Hence, the issuance of Industrial Revenue Bonds for the purposes stated would serve a public purpose. The appellant contends that the Legislature did not intend to make the Industrial Revenue Bond Act applicable to projects which had been undertaken prior to the effective date of the Act, January 1, 1967, but which had not then been completed or financed. In short, the appellant contends that the Industrial Revenue Bond Act is available only to projects commenced after January 1, 1967. We do not agree with this contention.

The appellant relies upon the cases of *Manning v. Fiscal Court of Jefferson County, Ky.,* 405 S. W. (2d) 755, and *Smith v. State,* 222 Ga. 552, 150 S. E. (2d) 868. We have considered these two cases and factual distinctions could be made if necessary to distinguish the decisions there reached from the result which we here reach.

The Legislature, in authorizing the several counties ▌ of this state to exercise the powers delineated in Section 3 of the Act, did not limit the counties to the acquisition of a project which had been commenced after the effective date of the Act. There is no reference in the Act as to when a project must be commenced before a county is authorized to acquire it. It seems to us that if the Legislature intended to deny to the counties the right to acquire projects commenced before the effective date of the

Act, it would have expressly so stated. It is our conclusion that the Legislature intended the benefits of the Act to be as far-reaching as possible and that the time of the commencement of the construction of a project had no signicance as to whether the provisions of the Act were available if the projects were essential to the state's economy and the welfare of its people. The effective date of the Act, in our opinion, applies solely to the time when the county could exercise the powers therein granted.

It appears from the West Virginia case of *State v. Kemp,* W.Va., 151 S. E. (2d) 680, that the Industrial Development Bond Act of that state contained comparable provisions to our Act and it was there held that the Act permitted the acquisition of an existing industrial facility through the issuance of Industrial Development Bonds so long as such acquisition promoted the public welfare prescribed by the Legislature. In the Kentucky case of *White v. City of Hickman, Ky.,* 415 S. W. (2d) 379, it appears that the industry had purchased the property and had commenced the construction of a plant thereon, and it was not until the plant was approximately ninety percent completed when the City of Hickman enacted an ordinance authorizing the issuance of Industrial Revenue Bonds to finance the acquisition and completion of the manufacturing plant. The evidence in the case showed that construction of the plant was proceeded with on the good faith assumption that the project could and would be financed by the issuance of Industrial Revenue Bonds under the ordinance in question. The significance of this case is the fact that the Kentucky Court held that a project already under construction could be financed when it was shown that the construction was not complete and permanent financing had not been undertaken. Reference is had to the case of *Industrial Development Authority v. Suthers, Va.,* 155 S. E. (2d) 326; *Northeast Shoe Co. v. Industrial & Recreational Finance Approval Board, Me.,* 223 A. (2d) 423, which to some extent support our conclusions.

For the reasons hereinbefore stated the relief sought by the appellant must be denied and the judgment of the lower court, is accordingly,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.