**In re ALLGEIER & DYER, INC., Debtor.**

**ALLGEIER & DYER, INC., L. Stanley Chauvin, Jr., Trustee, Plaintiff,**

**v.**

**The CITY OF BOWLING GREEN, KENTUCKY, et al., Defendants.**

Bankruptcy No. 3–81–00359.

Adv. No. 3–81–0206.

United States Bankruptcy Court, W. D. Kentucky.

Feb. 7, 1982.

L. Stanley Chauvin, Jr., Trustee, Louisville, Ky., for plaintiff.

William J. Parker and Jerry F. Safford, Bowling Green, Ky., for defendant City of Bowling Green.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case came before the Court initially on complaint of the trustee to determine the rights of certain parties to certain funds. By amended complaint other defendants were added as parties and the original complaint was reiterated. A Second Amended Complaint was filed on August 27, 1981. This complaint seeks a determination by this Court that certain funds are property of the estate of the debtor and that the liens arising under the laws of the Commonwealth of Kentucky are subject to the avoiding powers of the trustee pursuant to the Bankruptcy Code, 11 U.S.C. § 545, § 546, and § 547.

The general facts of the dispute are relatively simple. The number of lien claimants and the specific facts surrounding each lien lend to the complexity of the proceeding, and the volume of pleadings further tends to confuse the situation. In an effort to preserve the clarity of the record, as well as save time, many of the defendants have adopted the briefs of other defendants.

In general, the facts surrounding the issues before the Court are:

On February 13, 1981, the debtor corporation, Allgeier & Dyer, Inc., filed a bankruptcy petition under the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* Subsequently, on February 20, 1981, the debtor converted its petition to one in Chapter 7 of the Bankruptcy Code, 11 U.S.C., or a "straight liquidation" petition.

Preceding the filing of the petition, the debtor had been engaged as the general contractor of a construction project for the General Motors Assembly Division (GMAD) and the City of Bowling Green, Kentucky, relative to a Corvette production facility.

Some thirty two (32) or more mechanics' liens have been filed by the defendants in this action as materialmen and subcontractors. The liens arise under the statutes of Kentucky, specifically KRS 376.010 *et seq.*, and/or KRS 376.210 *et seq.*, which provide for a private improvement lien and a public improvement lien, respectively. The plaintiff has duly protested these liens as required by statute.

By order of this Court, dated March 9, 1981, GMAD was directed to transfer to the trustee the sum of Two Hundred Ninety-One Thousand Four Hundred Seven Dollars ($291,407.00), representing the earned amount under certain contracts by and be-

tween the debtor, GMAD, and the City of Bowling Green.

Actions were commenced in the Warren Circuit Court by certain of the lien claimants. Thereafter, by order of July 6, 1981, this Court assumed jurisdiction of these matters pursuant to 28 U.S.C. § 1471.

The threshold determination to be made in this instance is whether the funds held by the trustee constitute property of the debtor's bankruptcy estate. If that is found to be the case, a determination then becomes necessary as to whether or not the liens attaching to that property are subject to the trustee's avoiding powers pursuant to the Bankruptcy Code, 11 U.S.C. § 545, § 546, and § 547.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

11 U.S.C. § 541 states:

(a) The commencement of a case under 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . .

KRS 376.210 is the public improvement lien statute under which the majority of the lien claimants have filed. KRS 376.210(1) states in pertinent part: "If the property improved is owned by the . . . city, the person furnishing the labor, materials or supplies shall have a lien on the funds due the contractor from the owner of the property improved." This statute has been construed in *McLean County v. Meuth Carpet Supply,* 573 S.W.2d 340 (Ky.1978). There the Kentucky Supreme Court stated: "The language of the statute makes it plain to us that the lien attaches only to funds actually earned by the contractor." *Id.* at 341.

The distinction between KRS 376.210 and KRS 376.010 (the private improvement statute) is the property to which the individual lien attaches. KRS 376.010(1) states: "Any person who performs labor or furnishes materials for the erection . . . or for the im-

provement in any manner of real property . . . shall have a lien thereon, and upon the land upon which the improvements were made or on any interest the owner has therein, to secure the amount thereof. . . ." Thus a public improvement lien attaches to funds due and owing to the contractor while a private improvement lien attaches to the improved property itself or the owner's interest therein.

Clearly, then, if the project was a "public" project, the majority of liens filed would attach if at all to the funds due the contractor, and in turn these funds would comprise property of the debtor's estate as a property interest of the debtor at the time of the filing of the petition. 11 U.S.C. § 541.

The idea that a public project existed is found in a careful review of the documentation of record (Exhibits "A", "B" and "C" as attached to Memorandum in Support of Motion for Declaration that the General Motors Assembly Division—Bowling Green Project is a "Public Improvement" within the Meaning of KRS Chapter 376 filed on behalf of the City of Bowling Green and General Motors Corporation, October 1, 1981).

The documentation reflects that the City of Bowling Green had taken all actions required by statute, KRS 103.200 through 103.285, in order to create a public improvement project, with the exception of actually issuing the contemplated revenue bonds pursuant to state and federal law. Industrial Building Revenue Bonds are governed by the Internal Revenue Code and the regulations promulgated thereunder which require essentially the same actions as Kentucky statutory requisites.

■ Section 103(b) of the Internal Revenue Code of 1954, as amended, and as construed by numerous revenue rulings indicates that official action by a municipality looking toward the issuance of the bonds is a sufficient nexus to the completed financing in order to warrant a finding of public purpose and true tax exemption even if the bonds themselves may be deferred for later issuance and the project may be financed

through interim financing. See § 103(b), Internal Revenue Code of 1954, as amended; Rev.Rul. 172, 1979 Int.Rev.Bull. No. 23, at 6; Rev.Rul. 320, 1979 Int.Rev.Bull. No. 42, at 7; Ltr.Rul. 8021039, 8047067, 8048024. Also see KRS 103.210. The Kentucky cases of *Manning v. Fiscal Court of Jefferson County*, 405 S.W.2d 755 (Ky.1966), and distinguished in *White v. City of Hickman*, 415 S.W.2d 379 (Ky.1967) reinforce and follow the concept embodied in the revenue rulings. In *White, supra*, the Court states:

"The proposal in *Manning* was held invalid because there was not a sufficient showing that the construction of Fontaine's plant had been induced by assurances of public financing. In this case, it is clear that the proposed bond issue was a key factor from the beginning and was deferred until a rather late stage of the construction work only by reason of the circumstance that Carborundum found it necessary or desirable to put up a major share of the total investment . . . there was ample proof that Carborundum proceeded with construction of the plant on the basis of a reasonable and good faith assumption that the project could and would be financed in part by a revenue bond issue under the statutes here in question." 415 S.W.2d at 380.

From the facts before the Court it would appear that a public improvement project existed and that any liens filed pursuant to the public improvement lien statute would attach to the funds due to the debtor-contractor.

The case of *In re D & B Electric, Inc.*, 4 B.R. 263 (Bkrtcy.W.D.Ky.1980), is factually distinguishable from the instant situation in that the lien there in question was founded in equity as arising in favor of one who waives a once available statutory remedy. In propounding a "trust fund theory", the Court there relied on the companion cases of *Selby v. Ford Motor Co., et al.*, 590 F.2d 642 (6th Cir. 1979), and *Parker v. Klochko Equipment Rental Co., Inc., et al.*, 590 F.2d 649 (6th Cir. 1979), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979), which specifically arose pursuant to a statutory trust fund in favor of subcontractors and materialmen under the Michigan Building Contract Fund Act, Mich.Comp.Laws Ann. § 570.151 et seq. (1967). A comparable trust fund provision is not found in Kentucky statutory enactments. Here, we are dealing with mechanics liens statutes, KRS 376.210 and KRS 376.010, which would be characterized as arising in law and not in equity. It is the task of the legislature to enact state law while a Federal Court is limited to the application and interpretation of that state law. For these reasons as regards the instant case, the Court is constrained to find that the reliance placed on *D & B Electric, supra*, is misplaced.

While the interest of a debtor in property is determined by state law, the question of whether such property is property of the debtor's estate is a federal question to be resolved under the Bankruptcy Code. *In re State of Missouri*, 7 B.R. 974 (D.C.Ark.1980). Statutory trusts are not assets of a bankrupt's estate. *In re Frosty Morn Meats, Inc.*, 7 B.R. 988 (D.C.Tenn. 1980).

Section 541 of the Bankruptcy Code states that the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property at the time of filing. 11 U.S.C. § 541(a). Subsection 6 of that section makes all proceeds of such property also property of the estate. 11 U.S.C. § 541(a)(6). Finally, subsection 7 includes in the estate any interest in property acquired after the commencement of the case. 11 U.S.C. § 541(a)(7). Section 541(d), 11 U.S.C. § 541(d), provides that the estate takes whatever interest, legal or equitable, that the debtor had in such property. Thus the debtor's interest in the contract proceeds are a part of its bankruptcy estate.

In view of the fact that the majority of lien claimants regarded the project as in the nature of a public improvement, and thus filed liens pursuant to KRS 376.210, and that this premise is further supported by the facts and resort to federal and Kentucky statutory and case law, the Court holds that the project was a public improvement project. Therefore, liens attach if at

all to the proceeds due the debtor-contractor in this case. If the funds are due the debtor, then the debtor has an interest in property relative to those funds which upon the filing of the petition constitute property of the bankruptcy estate and are properly in the hands of the trustee in bankruptcy.

Having made a threshold determination that the funds are property of the estate, the question then arises as to whether or not the liens attaching to those funds are subject to the trustee's avoiding powers.

The avoiding powers granted to the trustee by the Bankruptcy Code are found in 11 U.S.C. § 544, § 545, § 547, § 548, § 549, and § 724(a). Section 546 and specifically subsection (b), places a limitation on the trustee's powers of avoidance. By way of complaint the trustee has asserted primarily the avoiding powers under § 545, § 546, and § 547 of 11 U.S.C. Without specifically restricting the use of any other power, the case at bar appears to relate primarily to avoiding powers under § 545 (Statutory Liens). Certain of the claimants argue in opposition that the trustee's power under § 545 is so specifically limited by 11 U.S.C. § 546(b) that these powers cannot be utilized to affect the status of the filed mechanics' liens.

It is clear that a materialmen's lien is a statutory lien, as defined in the Bankruptcy Code. 11 U.S.C. § 101(38). The legislative history of the Code makes this explicit. "A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on a judicial action. Mechanics', materialmen's, and warehouseman's liens are examples." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 314 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News, p. 5787.

Section 545 of the Bankruptcy Code, 11 U.S.C. § 545, states in pertinent part:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

(A) when a case under this title concerning the debtor is commenced.

(B) when an insolvency proceeding other than under this title concerning the debtor is commenced;

(C) when a custodian is appointed or takes possession;

(D) when the debtor becomes insolvent;

(E) when the debtor's financial condition fails to meet a specified standard; or

(F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists . . . .

Section 545(2) is the most important of the four paragraphs of section 545 establishing the standards for invalidation. It deals with all statutory liens including tax liens. Its predecessor, Section 67(c)(1)(B) was referred to as the "heart" of the Bankruptcy Act's statutory lien provision. See 4 *Collier on Bankruptcy*, ¶ 67.20[3.1] (14th Ed. 1978). Section 545(2) requires perfection of the lien and establishes, essentially, a bona fide purchaser of property subject to the lien, test to determine perfection.

■ This test states, first of all, that for a statutory lien to be valid against the trustee it must be perfected or enforceable against one acquiring the rights of a bona fide purchaser for property subject to the lien, whether or not such a purchaser actually exists, at the date of the filing of the petition. The rights of a bona fide purchaser and how a statutory lien is perfected, or whether such a lien can be perfected against such a purchaser, are matters left for determination to state or federal lien law.

■ It is clear, therefore, that the enforceability of the statutory lien depends upon its state of perfection as of the date

the petition is filed. See 4 *Collier on Bankruptcy*, ¶ 545.04[2] (15th Ed. 1981).

The expression of the trustee's power to avoid statutory liens is limited by a saving provision which permits perfection after the filing of the petition in some instances. This provision is contained in 11 U.S.C. § 546(b) which provides that:

(b) The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

The legislative history suggests that the purpose of the restriction in § 546(b) is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection; the restriction is not designed to give the states an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 371 (1977).

It has been said under the Bankruptcy Code of 1978 that as a general rule, statutory liens survive the filing of a petition under the Code so long as statutory requirements have been strictly complied with. So long as, under applicable law, later perfection will relate back to the bankruptcy filing, such subsequent perfection will be good against the trustee and the lien will not be avoided. 9A Am.Jur.2d, *Bankruptcy*, § 570.

A reading of applicable Kentucky lien law becomes necessary in order to determine whether or not the liens, here in question are susceptible to avoidance by the trustee.

Generally speaking, KRS 376.210 makes provision for a mechanic's or materialmen's lien on the funds due the contractor under a public improvement project. Subsection (2) of that statute provides that one method of acquiring such a lien is by the initial filing of "a statement in writing that he has undertaken and expects to furnish labor, materials or supplies . . . and the lien for labor, material or supplies thereafter shall relate back and take effect from the date of the filing of the statement. . . ."

KRS 376.230 provides in part:

(1) The lien provided for in KRS 376.210 shall be dissolved unless the person who furnishes the labor, materials or supplies shall, within 30 days after the last day of the month in which any labor, materials or supplies were furnished, file . . . a statement in writing . . . setting forth the amount due for which the lien is claimed, the date on which labor, materials or supplies were last furnished and the name of the . . . public improvement upon which it is claimed. . . . (3) The county clerk, upon the filing of the statement, shall make an abstract and entry thereof as now provided by law in case of mechanics liens in the same book used for that purpose and shall make proper index thereof. . . .

Case law regarding this section would tend to support the idea that the filing of this statement is where the inchoate materialmen's lien may arise. See *Grigsbey v. Lexington & Eastern Railway Co.*, 150 Ky. 557, 150 S.W. 687 (1912), which held that a preliminary statement filed pursuant to KRS 376.210 (KS 2492) was not essential and that a statement filed pursuant to KRS 376.230 (KS 2494) was sufficient.

Perfection of the lien is provided for by KRS 376.240 which states:

Upon the filing of the statement of lien provided for in subsection (2) of KRS 376.230 in the county clerk's office and the delivery of an attested copy thereof to the public authority making the contract for the improvement . . . and the filing with the public authority of a signed copy of a letter addressed to the contractor or subcontractor at his address given in the contract, with a post office receipt showing that an attested copy of the lien statement has been sent by the lien claimant to the contractor or subcontractor by certified mail, return receipt requested, or by registered mail, *the claimant shall have a lien superior to any*

*lien subsequently perfected on any unpaid balance due the contractor under the contract of improvement.* (Emphasis added.)

It would appear by a cursory reading of the pertinent statutes that any lien claimant who had totally complied with these enactments would have a superior claim to that of the trustee provided that all requirements had been met by February 13, 1981, the date upon which the petition was filed.

The limitation of § 546(b) would apply where the state statutory law provides a grace period for perfection which would necessarily relate back to a time before the bankruptcy. The only "relation back" provision is that found in KRS 376.210(2) when a statement is filed by one expecting to furnish materials, labor or supplies. This provision bears no relationship to perfection or the priority of the lien but appears to have relevance only to when the lien is to take effect.

It is clear that the trustee has the power to avoid liens that are not so perfected nor enforceable against him as of the date of the petition as to have priority over the claim of the estate. However, it also becomes apparent that each individual lien must be reexamined by the trustee to determine its "state of perfection" or priority relative to compliance with the statutes of the Commonwealth of Kentucky, KRS 376.-210 *et seq.*

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law, Rule 752, R.B.P.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the trustee shall examine each claimed lien for compliance with Kentucky statutory requirements and petition to avoid those which are not so enforceable or perfected as to take precedence over the claim of the trustee in bankruptcy.