In re HUNTER ENGINEERED
PLASTICS, INC., Debtor.

HUNTER ENGINEERED PLASTICS,
INC., and Winnebago Drainage
Systems, Inc., Plaintiffs,

v.

UNITED PIPELINE CONSTRUCTION
COMPANY, INC., Defendant.

Bankruptcy No. 85–08461.
AP No. 86–0384.

United States Bankruptcy Court,
N.D. Alabama.

April 17, 1987.

---

Robert B. Rubin and Donald M. Wright, Birmingham, Ala., for debtor.

Charles R. Keeton and Helen Lucier, Louisville, Ky. and W. Dennis Schilling, Birmingham, Ala., for Winnebago Drainage Systems, Inc.

William Allen Smyly, Jr. and Mark P. Williams, Birmingham, Ala., for United Pipeline Const. Co., Inc.

## MEMORANDUM OPINION

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled adversary proceeding is before the Court on motions for summary judgment filed by each of the plaintiffs and on a motion of the defendant for release of liens and conditionally, for interpleader. The dispute between the parties is based upon the sum of $39,330.48, which is presently owed by the defendant for its purchase of pipe and materials, as to which sum each of the plaintiffs claims to be entitled. All of the facts relevant to a resolution of this dispute have either been stipulated by the parties or are apparent from the file maintained by the clerk of the court in this proceeding.

*Findings of Fact—*

Hunter Engineered Plastics, Inc. (Hunter), the debtor in the above-styled case and one of the plaintiffs herein, purchased certain pipe and materials from Winnebago Drainage Systems, Inc. (Winnebago), through two separate transactions, for a total purchase price of $34,049.20. The two invoices reflecting the transactions were dated October 31, 1985, and November 12, 1985, respectively, and the terms of each were "Net Due 30 days".

Hunter, in turn, sold the pipe and materials to United Pipe Construction Company, Inc. (United), to be used in a construction project at the Jim Beam Distillery in Bullit County, Kentucky, for which United was the general contractor. The sale of the

pipe and materials by Hunter to United was for a total purchase price of $39,330.48. The invoices reflecting the transactions were dated November 8, 1985, and November 22, 1985; the terms of each invoice were "Net 30."

Winnebago shipped the pipe and materials directly to the Jim Beam project site in Kentucky pursuant, apparently, to Hunter's instructions. On December 26, 1985, United issued a check payable to Hunter in the amount of $39,330.48, representing payment in full for the pipe and materials which it had purchased from Hunter.

Prior to receiving the proceeds of the check from United and prior to paying Winnebago pursuant to the invoices of October 31, 1985, and November 12, 1985, Hunter filed a petition for reorganization under title 11, United States Code, chapter 11. In the schedules accompanying its petition, Hunter listed Winnebago as the holder of an unsecured claim in the amount of $34,049.20. Apparently in response to Hunter's chapter 11 petition, United placed a stop payment order on the check issued to Hunter.

Hunter, as debtor-in-possession, initiated the present adversary proceeding by filing a complaint against United, alleging that the sum due, evidenced by the check, constitutes property of the bankruptcy estate and requesting that United be ordered to deliver the sum to Hunter, pursuant to 11 U.S.C. § 542(a) and (b).[1]

In its answer to Hunter's complaint, United alleged, inter alia, that Hunter's failure to pay Winnebago for the pipe and materials which Hunter had sold to United had resulted in the filing by Winnebago of a lien against the real property upon which the Jim Beam project is located, that as a result of said lien, United may be subjected to having to pay twice for the pipe and materials purchased from Hunter, and that applicable state law imposes a trust on the proceeds of the check, with Winnebago be-

ing a beneficiary of such trust to the extent of $34,049.20 and with Hunter's bankruptcy estate being a beneficiary thereof only to the extent of $5,281.28.

On the motion of United, Winnebago was joined as a party plaintiff pursuant to Bankruptcy Rule 7019 and by order of this Court entered on September 16, 1986. Winnebago filed a pleading setting forth a claim against United and a cross-claim against Hunter, requesting that United be required to pay to Winnebago the sum of $34,049.20, and that the Court enter a declaratory judgment against Hunter to the effect that, to the extent of $34,049.20, the account owed by United is not property of the debtor's estate.

United subsequently filed a pleading styled "Motion for Release of Liens and Conditionally, for Interpleader." In its motion, United requested that an order be entered requiring that any liens arising from the sale of the pipe attach only to the funds amounting to $39,330.48, which it contends are held by it in a Kentucky statutory trust, and that, upon entry of such an order, United be permitted to interplead these funds, be discharged from further liability, and be dismissed with prejudice from this adversary proceeding.

At a continued pre-trial conference on November 25, 1986, the parties agreed that the material facts are undisputed and that the matter should be submitted to the Court on motions for summary judgment. Each of the plaintiffs subsequently filed such a motion. On January 14, 1987, the parties filed a written stipulation waiving a hearing on the pending motions.

*Conclusions by the Court—*

Section 541(a)(1) of title 11, United States Code [2] provides that the commencement of a case under title 11 creates an estate which is composed, in part, of "all legal or equitable interests of the debtor in property as of the commencement of the case", regardless of the location of the property

---

**1.** Subsections (a) and (b) of 11 U.S.C. § 542 require that an entity in possession of certain assets of the estate deliver such assets to the trustee. *See also,* 11 U.S.C. §§ 1101(1) and 1107(a).

**2.** 11 U.S.C. § 542(a)(1) (1979).

or who is in possession thereof. However, property to which the debtor holds bare legal title, as opposed to an equitable interest, becomes property of the estate only to the extent of such title.[3]

In the present case, it is the contention of both United and Winnebago that the account debt owed by United constitutes trust funds in which Hunter's equitable interest extends only to the sum of $5,281.28. This sum represents the mark-up by Hunter in the sale of the pipe to United. In support of this position, United and Winnebago cite Ky.Rev.Stat. § 376.-070(1) (1978), which provides, in pertinent part, as follows:

> Any contractor ... who builds, repairs or improves the property of another under such circumstances that a mechanic's or materialmen's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.

According to United and Winnebago, by virtue of § 376.070, any funds paid to a contractor by the owner of the property are held in trust by the contractor for the benefit of persons who furnished the material or performed the labor in connection with the project. In further support of this proposition, Winnebago cites Ky.Rev.Stat. § 376.990 (1978), which imposes criminal penalties for violations of § 376.070.

Clearly, the express language of § 376.-070 imposes upon the contractor, under certain circumstances, a duty to pay certain persons from funds received from the property owner. *Blanton v. Commonwealth*, 562 S.W.2d 90 (Ky.Ct.App.1978). It is equally clear, however, that the statute does not expressly provide that such funds are to be held in trust by the contractor. *In re Dave Thomas Co., Inc.*, 51 B.R. 66 at 69 (Bankr.W.D.Ky.1985). Winnebago concedes the lack of direct statutory support for the trust-fund theory, but argues that a trust should be implied on the basis of §§ 376.070 and 376.990, caselaw interpreting those statutes and statutes of other

states that are similar thereto, and equitable principles.

In considering whether or not statutes similar to those at issue in the present case create a trust fund in favor of unpaid laborers and materialmen, courts have reached varying conclusions. *See, Cherokee Carpet Mills, Inc. v. Worthen Bank and Trust Co.*, 262 Ark. 776, 561 S.W.2d 310 (1978), (lien statute imposing criminal penalties upon contractor who fails to discharge liens of laborers and materialmen provides unpaid materialmen with neither a property interest nor a trust-fund interest in funds paid by the owner to the contractor); *But see*, 78 A.L.R.3d 563, 584 (1977), (citing cases from courts of states which have held that such statutes impose a trust in favor of unpaid laborers and materialmen). Apparently, neither the Kentucky Supreme Court nor any other courts of that state have addressed the question of whether § 376.070 creates a trust in favor of laborers and materialmen, as no such case has been cited to or discovered by the Court.

The United States Bankruptcy Court for the Western District of Kentucky has, on several occasions, been faced with the general issue as to whether, under Kentucky law, a contractor or other person who receives funds from the owner holds such funds in trust for the benefit of unpaid laborers and materialmen. In *In re D & B Electric, Inc.*, 4 B.R. 263 (Bankr.W.D.Ky. 1980), prior to the filing of its petition in bankruptcy, the debtor, as electrical subcontractor on two construction contracts, was supplied lighting materials for the projects by Rueff Lighting Company. Although the debtor fell into arrears in its accounts with Rueff, Rueff failed to perfect a lien against the construction sites. Subsequent to the expiration of the statutory period for the filing of a materialmen's lien, Rueff entered into an agreement with the general contractor whereby the latter delivered to Rueff certain checks which were payable jointly to Rueff and D & B and which had been endorsed by D & B; in consideration therefor, Rueff agreed

3. 11 U.S.C. § 542(d) (1979).

to waive its rights to assert a lien. Upon the filing of the debtor's petition in bankruptcy, the checks remained in Rueff's possession and had not been endorsed by Rueff. The trustee claimed superior right and title to the proceeds of the checks on the basis of § 70(c) of the Bankruptcy Act. Rueff argued that it had priority to the proceeds by virtue of its waiver of its statutory lien rights. Id. at 265. Bankruptcy Judge Merritt S. Dietz, Jr. found that while Rueff's alleged "waiver" of its lien rights, which occurred after its statutory right to assert a lien had expired, did not entitle it to a legal or an equitable lien, its status as an unpaid materialman resulted in *"the creation of a trust for its benefit* of funds in the hands of the general contractors, [which funds] thereby bypass[ed] D & B's estate entirely." Id. at 268.

In *D & B Electric,* the court based its decision on two Sixth Circuit decisions in which the Michigan Builder's Trust Fund Act, Mich.Comp.Laws Ann. § 570.151 (1967) was interpreted. The Michigan statute, however, expressly imposes a trust, for the benefit of unpaid materialmen, upon funds paid to a contractor by the owner.[4] The court in *D & B Electric* noted the lack of Kentucky common law and direct statutory authority in support of the trustfund theory, but found that a trust should nevertheless be implied from the provisions of Ky.Rev.Stat. §§ 376.070 and 376.990.

On two subsequent occasions, the United States Bankruptcy Court for the Western District of Kentucky held, in effect, that funds paid to a general contractor by the owner of a construction project are not imposed with a trust for the benefit of unpaid materialmen. *In re Dave Thomas Co., Inc.,* 51 B.R. 66 (Bankr.W.D.Ky.1985); *In re Allgeier & Dyer, Inc.,* 18 B.R. 82, 8 Bankr.Ct.Dec. 1006 (Bankr.W.D.Ky.1982).[5] In each of these cases, the Court noted that the decision in *D & B Electric* was based on the Sixth Circuit's interpretation of a Michigan statute which expressly provides for the imposition of such a trust, and found *D & B Electric* to be distinguishable on its facts. *In re Dave Thomas,* 51 B.R. at 69; *In re Allgeier & Dyer, Inc.,* 18 B.R. at 85. In *In re Allgeier & Dyer, Inc.,* 18 B.R. 82, 8 Bankr.Ct.Dec. 1006 (Bankr.W.D. Ky.1982), the debtor had been engaged, prior to the filing of its bankruptcy petition, as the general contractor of a construction project for the City of Bowling Green, Kentucky, and General Motors Assembly Division. Subsequent to the filing of the debtor's petition, the trustee filed a complaint requesting the court to determine the rights of certain parties to funds which the court had directed General Motors Assembly Division to transfer to the trustee; the funds at issue represented amounts which the debtor had earned pursuant to the contract prior to the filing of its bankruptcy petition. A large number of unpaid materialmen and subcontractors who had filed mechanic's liens claimed to be entitled to the funds. The Court held that the applicable Kentucky mechanic's lien statutes[6] do not create a trust fund for the benefit of unpaid materialmen and sub-

---

**4.** The Michigan statute provides, in pertinent part, as follows:

> In the building construction industry, the building contract fund paid by any person to a contractor or ... to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person in making the payment to the contractors, laborers, subcontractors, or materialmen, and a contractor ... shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich.Comp.Laws Ann. § 570.151 (1967).

**5.** *In re Dave Thomas Co., Inc.* and *In re Allgeier & Dyer, Inc.* were decided by Bankruptcy Judges William J. Brown and Stewart E. Bland, respectively.

**6.** Ky.Rev.Stat. §§ 376.210 and 376.010 (1978). § 376.010 provides, in pertinent part, as follows:

> "(1) Any person who performs labor or furnishes materials for the erection, altering or repairing of a house or other structure ... or for the improvement in any manner of real property ... by contract with, or by the written consent of, the owner, contractor, subcontractor, architect or authorized agent, shall have a lien thereon, and upon the land upon which the improvements were made ... to secure the amount thereof."

In the present case, any lien to which Winnebago may be entitled would arise from § 376.010.

contractors and that the funds at issue were thus property of the bankruptcy estate.[7] Id. at 85.

The court in *In re Dave Thomas Co., Inc.*, 51 B.R. 66 (Bankr.W.D.Ky.1985), was presented with the question as to whether certain accounts receivable owing to the debtor pursuant to a construction contract constituted property of the estate so that a federal tax lien could have attached thereto. The plaintiff, which had supplied materials to the debtor for use in the construction project, argued that, based on *D & B Electric, Inc.*, 4 B.R. 263 (Bankr.W.D.Ky. 1980), the accounts receivable were not a part of the bankruptcy estate. Noting that § 376.070 does not expressly create a trust fund for materialmen, the court found the funds at issue to be property of the estate. *In re Dave Thomas Co., Inc.*, 51 B.R. at 69 (Bankr.W.D.Ky.1985).

The question was again considered by Judge Dietz in *In re Weedman*, 65 B.R. 288 (Bankr.W.D.Ky.1985). In *Weedman*, the court went one step beyond its decision in *D & B Electric*, and held that § 376.070 imposes an express trust for the benefit of unpaid materialmen upon funds received by a contractor from the property owner. Id. at 291.

▆▆ Thus, the judges of the United States Bankruptcy Court for the Western Division of Kentucky disagree as to whether § 376.070 and the lien statutes relative thereto impose a trust upon funds paid to a contractor by the owner of the property. This Court notes that the creation or modification of state law is a matter for the state legislature; in making a determination of questions involving state law, a federal court must apply existing state law. *United Parcel Service v. Weben Industries, Inc.*, 794 F.2d 1005 (5th Cir.1986). When a federal court is presented with the task of interpreting a state statute which the state courts have not addressed, the court must attempt to project the result which the highest court of the state would reach if faced with the question.

▆▆ In the present case, it is unnecessary for this Court to predict whether the Kentucky Supreme Court would find that § 376.070 imposes a trust fund. Rather, the Court finds that, under existing Kentucky law, Winnebago does not fall within the class of persons to which § 376.070 applies and is thus not entitled to the funds at issue herein.

In support of its motion for summary judgment, the debtor argues that, based on the undisputed facts, Winnebago is not entitled to a materialmen's lien and, therefore, cannot claim a right to receive payment under § 376.070. Assuming for the sake of argument only, that Winnebago may be properly classified as a materialman in this case, the question becomes whether the duty imposed on a contractor by § 376.070 to pay a particular materialman is conditioned upon that materialman's having a right, under Kentucky law, to assert a lien against the property. On the basis of Kentucky statutory law as interpreted by the courts of that state, the present Court concludes that the answer to that question is in the affirmative. The Court further concludes that Winnebago is not entitled to a materialmen's lien on the Jim Beam project site.

Although subsection (1) of § 376.070 obligates a contractor, under circumstances in which a lien may be imposed, to pay all materialmen and laborers from funds received from the owner, by its own terms, the statute is inapplicable, and the duty of the contractor is eliminated, in situations in which the persons entitled to receive such payment have waived their rights to file liens against the property. Ky.Rev.Stat. § 376.070 (3) (1978). The limitation contained in subsection (3) of the statute supports the conclusion that any right which the statute may confer upon laborers and materialmen is conditioned upon such persons' having a right to assert a lien against the property.

Additionally, the Court of Appeals of Kentucky has stated that § 376.070 requires a contractor to pay a materialman if the situation is such that a *lien may be*

**7.** The court in *In re Allgeier & Dyer, Inc.* made    no reference to Ky.Rev.Stat. § 376.070.

*imposed* upon the property being improved. *Henry A. Petter Supply Co. v. Hal Perry Construction Co.,* 563 S.W.2d 749 (Ct. of Ap.Ky.1978). That same court has also implied that one purpose of § 376.070 is to prevent the owner of the property from being forced to pay twice for improvements to the property due to the assertion of mechanic's liens. *Blanton v. Commonwealth,* 562 S.W.2d 90 (Ct. of Ap. Ky.1978). Thus, these statements by the Court of Appeals of Kentucky suggest that the right to assert a lien is a prerequisite to the right of a materialman to require payment from the contractor under § 376.-070(1).

Although Winnebago has cited to the Court no statute entitling it to the lien which it is alleged to have asserted against the Jim Beam project site, Ky.Rev.Stat. § 376.010 [8] would appear to be the statutory basis of any materialmen's liens which would arise from the project. Subsection (1) of that statute provides, in pertinent part, that "any person who ... furnishes material for the improvement in any manner of real property ... by contract with or by the written consent of the owner, contractor, subcontractor, architect, or authorized agent, shall have a lien thereon and upon the land upon which the improvements were made."

The Court has been presented with no evidence that Winnebago shipped the pipe and materials to the construction site under a contract with, or with the written consent of, any person designated in § 376.010. To the contrary, the facts, as stipulated by the parties, are that Winnebago simply sold the pipe and materials to Hunter, which in turn, sold them to United. Winnebago's contract was *with Hunter.* Hunter cannot be characterized as a contractor or a subcontractor for purposes of the lien statute, as Hunter's sole connection with the project was in the selling of goods to the contractor. *See, Woodson Bend, Inc. v. Masters' Supply, Inc.,* 571 S.W.2d 95 at 100 (Ct. of Ap.Ky.1978). Hunter can only be classified as a materialman, furnishing materials to the contractor. The language of § 376.010 is clear as to the class of persons who acquire a lien upon the improvements and the property upon which such improvements are made; Winnebago does not fall within that class. As pointed out by the plaintiff, in 1900, the highest court of the state of Kentucky at that time held that the lien statute at issue herein does not confer lien rights upon one who simply furnishes materials to a materialman. *Hightower v. Bailey,* 108 Ky. 198, 56 S.W. 147 (Ct. of Ap.Ky.1900).

Based on the foregoing, the Court concludes that the "lien" asserted by Winnebago in connection with the sale of pipe by Hunter to United is a fiction under the law of Kentucky. It was Hunter who was a "materialman"—not Winnebago. As a result, United's motion for release of liens and conditionally for interpleader, is due to be granted. Having determined that Winnebago has no equitable interest, in the nature of a trust, in the funds at issue herein, the Court concludes that the motion of Winnebago for summary judgment is due to be denied and that the debtor's motion for summary judgment is due to be granted.

An appropriate order will be entered.