Terry R. BLANTON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Feb. 10, 1978.

Robert E. Cato, London, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, PARK and WILHOIT, JJ.

PARK, Judge.

The appellant, Terry R. Blanton, is a building contractor engaged in the con-

struction of single family residences. Blanton was indicted and convicted in the Laurel Circuit Court of theft by failure to make required disposition of property (KRS 514.-070), receiving a sentence of two years imprisonment.

Blanton had entered into a contract to construct a residence for Allen Scharf for the sum of $27,000.00. Scharf paid Blanton the sum of $22,000.00 on the contract. Scharf, who is a Kentucky State Policeman, arrested Blanton for theft by failure to make required disposition of property when he discovered that Blanton had failed to pay certain claims for labor and material used in construction of the residence. On this appeal, Blanton asserts two grounds for reversing the judgment of the circuit court: (1) that he was entitled to a directed verdict of acquittal; and (2) that he was entitled an instruction on a lesser included misdemeanor offense.

## I

KRS 514.070(1) provides:

A person is guilty of theft by failure to make required disposition of property received when:

(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and

(b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

In the brief filed on behalf of the Commonwealth, the Attorney General concedes error. The Attorney General's brief suggests that a building contractor is under no legal duty to pay claims for labor and material furnished on the job out of proceeds of any payment received from the owner of the property.[1] We disagree.

KRS 376.070(1) provides:

---

1. At oral argument, the assistant Attorney General explained that their computer service had found no case in support of the proposition.

Any contractor, architect, or other person, who builds, repairs, or improves the property of another under such circumstances that a mechanics' or materialman's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.

Blanton clearly had a legal obligation to pay in full all claims for material and labor furnished on the Scharf residence out of the sum of $22,000.00 received on the contract from Scharf. If the amount paid by the owner was not sufficient to pay all such bills, then it was Blanton's duty to pay all bills for material and labor on a pro rata basis. KRS 376.070(2).

KRS 514.070 is identical with section 1530 of the final draft of the Kentucky Penal Code published in November 1971. Consequently, the commentary accompanying section 1530 of the final draft of the Kentucky Penal Code may be used as an aid in construing KRS 514.070(1). *See Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1976); KRS 500.100. The commentary to section 1530 of the final draft stated:

An example of property obtained "subject to a known legal obligation" is a contractor or architect who fails to apply payments to claims of mechanic's or materialman's liens presently an offense under KRS 376.070.

The drafters of the penal code clearly intended KRS 514.070(1) to apply to contractors who failed to apply payments received from the owner to claims for labor and material furnished on the job.

KRS 514.070(1) is based upon section 223.8 of the American Law Institute's Model Penal Code. The commentary to an earlier draft of that section stated:

The section applies also where statutes require certain classes of persons who receive funds to reserve such funds for particular purposes. Examples of this legislation are *the building contractor statutes requiring payments received on the building contract to be used to pay laborers and materialmen*, statutes re-

quiring factors and commission merchants to remit the net proceeds of sale of agricultural products to the consignor, and statutes requiring retailers to collect sales taxes to be paid over to the state.

ALI Model Penal Code (Tentative Draft # 2, 1954) 81 (emphasis added). There is no merit to the Attorney General's suggestion that a building contractor has no duty to apply amounts received from the owner to the payment of claims for labor and material used on the job. Unless the contractor pays the claims for labor and material, mechanics' liens may be asserted against the owner's property, and the owner may be required to pay twice for his home.

The Commonwealth introduced evidence of three unpaid claims for labor and material furnished on the Scharf residence. Hoover Neeley testified that he performed the plumbing work on the Scharf residence. Neeley testified that Blanton had paid him only $500.00 on his bill for $1,750.00, leaving a balance of $1,250.00 due for his work. Roger Rush testified that he was a carpenter on the Scharf job and that Blanton had failed to pay him $260.00 for labor performed by him. The credit manager for Central Kentucky Supply Co., Inc., testified that Blanton owed the sum of $8,129.73 for materials furnished to the Scharf job. He further testified that Blanton had made no payment for any of the materials furnished to the Scharf residence. The invoices from Central Kentucky Supply were dated between February 17 and March 26, 1976.

Scharf testified that he paid Blanton $22,000.00 on the contract between January 6 and March 29, 1976. According to Scharf, Blanton had asked for an advance on the final payment on March 29 so that he could pay bricklayers. Scharf testified that he asked Blanton whether he was behind on his bills and that Blanton assured him that all materials used in the residence had been paid to date. Having introduced evidence of payment by the owner and nonpayment of the claims for labor and material, the Commonwealth had made out a prima facie case that Blanton had intentionally dealt

with the Scharf money as his own. Such an intention is the natural inference to be drawn from that evidence.

Blanton claimed that he did not owe the three claims for labor and material on the Scharf job. He testified that on February 10, 1976, he had paid Central Kentucky Supply the sum of $15,000.00 borrowed from a savings and loan association. However, it should be noted that this was seven days before the date of the first invoice for materials for the Scharf job. Blanton testified that he usually owed around $10,000.00 to Central Kentucky Supply at all times. There is nothing to indicate that the $15,-000.00 payment to Central Kentucky Supply was for the Scharf job. As Blanton testified:

> Well, they put it wherever they wanted to. Central Kentucky Supply did. It was just a running account that I had with them and I paid on it. I told them where to put it, which ones to apply to, but generally they didn't list, you know. They just put it wherever they wanted to apply, the oldest bill or whatever.

He also testified that he owed nothing to Neeley or Rush. As to Neeley, Blanton claimed that the bill was inflated and included work not performed on the Scharf job. As to Rush, Blanton claimed that he was entitled to an offset for the value of labor performed by him for the benefit of Rush.

 In their written contract, Scharf and Blanton clearly contemplated that the progress payments would be applied to the bills for labor and materials for which liens could be asserted against the property. On cross-examination, Blanton admitted that it was his responsibility to pay for all labor and material used on the job. Blanton does not seriously argue that he did not receive the progress payments from Scharf "subject to a known legal obligation" to pay for the labor and material on the Scharf job. There was also evidence that Blanton used a portion of the Scharf funds to pay bricklayers who were working on three houses for Blanton, including the Scharf home. Blanton was not entitled to use the Scharf

payments to satisfy claims for labor and materials on other jobs. He could not rob Peter to pay Paul. If a contractor cannot pay his debts as they come due and if he diverts money received on one job to the payment of claims on another job, the contractor has intentionally dealt with that money as his own. Blanton offered no accounting of the funds received from Scharf, nor did he offer any evidence of his ability to pay the outstanding claims on the Scharf job.

We conclude that Blanton was not entitled to a directed verdict of acquittal. Neither the trial court nor the jury was required to accept Blanton's explanation for the three bills. The trial court did not err in refusing to direct a verdict of acquittal.

## II

As pointed out above, KRS 376.070 imposes a duty upon a contractor to apply payments received from the owner to the claims of persons furnishing material and labor on the job. KRS 376.990(2) provides that any person who violates any of the provisions of KRS 376.070 shall be fined not less than $50.00 nor more than $1,000.00, or imprisoned for not less than one month nor more than 12 months, or both. The provisions of KRS 376.990(2) were not repealed by the enactment of the penal code. Blanton's attorney requested an instruction under KRS 376.990(2), which the trial court refused to give.

 KRS 376.070 and KRS 376.990(2) appear to impose absolute criminal liability upon a contractor for failure to pay laborers and materialmen out of sums received from the owner. On the other hand, before a contractor can be guilty by theft of failure to make required disposition of property received under KRS 514.070, the contractor must receive the money from the owner "subject to a known legal obligation to make specified payment" and the contractor must "intentionally [deal] with the property as his own" by failing to make the required payments. The Commonwealth did not trace Blanton's use of the Scharf money. Evidence of payment by Scharf

and nonpayment of the claims by Neeley, Rush and Central Kentucky Supply made out a prima facie case just sufficient to take the felony charge to the jury. Consequently, Blanton was entitled to a misdemeanor instruction under KRS 376.990(2), there being a real issue whether Blanton *intentionally* dealt with the Scharf payments as his own money. A jury could find that Blanton failed to make the payments required by KRS 376.070 and yet entertain a reasonable doubt from the evidence that he did so with the *intention* of dealing with the progress payments as his own by failing to satisfy *known* legal obligations to pay laborers and materialmen.

Blanton must be granted a new trial because of the trial court's failure to give an instruction on the lesser included offense under KRS 376.990(2).

### III

As indicated above, Blanton testified that he believed in good faith that he owed nothing to Neeley, Rush, or Central Kentucky Supply on the Scharf job. We also suggested that KRS 376.070 and KRS 376.990(2) appear to impose absolute criminal liability upon a contractor who fails to pay claims for labor and material out of payments received from the owner of the property. Because there must be another trial of Blanton, we must determine whether a contractor may be criminally liable under KRS 376.070 and KRS 376.990(2) when, in good faith, he disputes the amount of the claim of a person furnishing labor or material on the job.

 In the absence of a clear legislative purpose to impose absolute liability for conduct described in a statute outside of the penal code, a person may not be guilty of an offense unless his conduct was accompanied by a culpable mental state. KRS 501.050(2). *See also* KRS 501.030(2). If KRS 376.070 and KRS 376.990(2) were construed to impose absolute criminal liability upon a contractor acting in good faith for a simple breach of contract, the statute probably would violate section 18 of the Kentucky Constitution which restricts imprisonment for debt. A penal statute which is no more than a debt collecting statute is unconstitutional. *Burnam v. Commonwealth*, 228 Ky. 410, 15 S.W.2d 256 (1929); *Ward v. Commonwealth*, 228 Ky. 468, 15 S.W.2d 276 (1929).

 We find nothing in KRS 376.070 or KRS 376.990(2) which indicates a clear legislative purpose to impose absolute criminal liability. Such a construction would raise serious questions under section 18 of our constitution. Consequently, we construe the statutes to require a culpable mental state before a contractor can be guilty of even a misdemeanor.

 In summary, the failure to pay claims for labor and material out of amounts received from the owner constitutes a misdemeanor under KRS 376.990(2) only if the contractor fails to pay sums which he *knows* to be due and owing. No criminal liability may be imposed for failure to pay an amount which is disputed in good faith by the contractor. Moreover, to commit the felony of theft by failure to make required disposition of property under KRS 514.070, a contractor must not only *know* that an amount is due and owing for labor and material, but he must also *know* that he has a legal obligation to make payment out of the proceeds received from the owner and must *intentionally* deal with proceeds as his own.

The judgment of the circuit court is reversed with directions to grant Blanton a new trial.

All concur.