590 F.2d 649
 Bankr. L. Rep. P 67,084
Robert E. PARKER, Trustee for Olympia Construction Co.,
Bankrupt, Plaintiff-Appellee,
v.
KLOCHKO EQUIPMENT RENTAL CO., INC., Defendant-Appellant,
Mario Trucking Company, Defendant-Appellant,
Price Brothers Company, Defendant-Appellant,
Doug Schroeder, Inc., Defendant-Appellant.
 Nos. 76-2395 to 76-2398.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 18, 1978.
Decided Jan. 11, 1979.
 
 Richard J. Langs, Langs, Schatzberg, Patterson & Langs, Detroit, Mich., for defendant-appellant in No. 76-2395.
 Stephen G. Danko, D'Avanzo & Danko, Southgate, Mich., for defendant-appellant in No. 76-2396.
 Robert R. Nix, II, Kerr, Wattles & Russell, Detroit, Mich., for defendant-appellant in No. 76-2397.
 Marlynn Marcks, Harris, Ben & Marcks, P. C., Detroit, Mich., for defendant-appellant in No. 76-2398.
 Andrew A. Paterson, Cross, Wrock, Miller & Vieson, Detroit, Mich., for plaintiff-appellee.
 Before WEICK, LIVELY and MERRITT, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 The trustee in bankruptcy of a subcontractor seeks to set aside as preferences payments made to four materialmen within four months of the subcontractor's bankruptcy.[1] The district court for the Eastern District of Michigan held that the payments were preferences and granted judgment to the trustee. The materialmen appealed. We reverse on the grounds that the payments were made from funds subject to the Michigan Builders Trust Fund Act[2] which were not the "property" of the bankrupt under § 70 of the Bankruptcy Act, 11 U.S.C. § 110 (1976).[3]
 
 I. FACTS
 
 2
 The subcontractor, Olympia Construction Co., filed its petition in bankruptcy on December 21, 1973. During the course of 1973 the four materialmen, Klochko Equipment Rental Co., Mario Trucking Co., Price Brothers Co. and Doug Schroeder, Inc., provided materials and supplies to Olympia, which was a subcontractor to Markward & Karafiles (M & K) on Public construction projects in the vicinity of Detroit. During the same period Doug Schroeder, Inc. was also a materialman to Olympia in connection with work on a Private project in which Plymouth Construction Co. was the general contractor.
 
 
 3
 During the summer of 1973 Olympia's indebtedness grew to the extent that the materialmen became apprehensive. M & K, the general contractor on the public jobs, intervened. On September 11, 1973 M & K issued two checks, one for $25,000 payable jointly to Olympia and Mario, the other for $6,883.56 payable jointly to Olympia and Price. M & K issued a similar joint check to Schroeder and Olympia on October 1. M & K also issued a joint check for $20,000 to Olympia and Klochko in settlement of a garnishment proceeding brought by Klochko. Olympia indorsed all four checks over to the materialmen.
 
 
 4
 On the private construction project, the pattern of events was similar, and on November 1, 1973 the general contractor issued a joint check for $3,117.32 which Olympia indorsed to Schroeder.
 
 II. THE PRIVATE CONSTRUCTION PROJECT
 
 5
 The issue presented by the payment to Schroeder for materials supplied to the Private construction project is identical to that in Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir. 1978). Accordingly, we hold that by virtue of the Michigan Builders Trust Fund Act, Mich.Comp.Laws Ann. § 570.151 (1967),[4] the funds paid to Schroeder were never Olympia's property. Therefore, Olympia's trustee in bankruptcy cannot set aside the payment under § 60 of the Bankruptcy Act, 11 U.S.C. § 96.
 
 III. THE PUBLIC CONSTRUCTION PROJECTS
 
 6
 In Selby v. Ford Motor Co., supra, we analyzed the property rights which are created by the Michigan Builders Trust Fund Act and held that these rights should be recognized under the Bankruptcy Act. We found that trust funds due or in the hands of a contractor as trustee are not his "property" under § 70 of the Bankruptcy Act and, therefore, payments of such trust fund may not be set aside as preferential transfers under § 60.
 
 
 7
 The instant case and Selby differ in only one respect. Selby involved a private construction project while this case involves public projects. Thus, the only new question raised on this appeal is whether the state statutory trust, and our holding in Selby, apply to Public as well as Private construction projects.
 
 
 8
 The Michigan act, by its express terms, applies to "the building contract fund paid by Any person to a contractor or . . . a subcontractor," and we would have no hesitancy or difficulty in applying the act to public construction projects, except for language that appears in our opinion in General Insurance Co. of America v. Lamar Corp., 482 F.2d 856 (6th Cir. 1973). We have determined, however, that this language was not necessary to the opinion, narrowly read, and we decline to follow it.
 
 
 9
 In the General Insurance case, a general contractor on a public construction project owed money for prior unrelated work to a materialman. The general contractor paid the materialman money received from the owner on the public construction project. The materialman applied part of the payment from the contractor to the pre-existing indebtedness and used the funds for general business purposes. When the general contractor defaulted, his surety on the performance bond took over the work. The surety brought suit against the materialman for that portion of the payment applied to the pre-existing indebtedness. Judge McCree, writing for this Court, reversed a judgment in favor of the surety on two grounds. His opinion said (1) the Michigan statutory trust applies only to private construction projects, not public projects and thus does not affect the rights of the parties; and (2) "under Michigan law," the materialman "was under no duty to apply the funds to the . . . (public project rather than the prior indebtedness) in the absence of fraud or an express direction by the (contractor) . . . ." 482 F.2d at 861.
 
 
 10
 We believe the second ground for the Court's decision quoted above is correct and was dispositive of the case, whether or not the Michigan statutory trust governed the rights of the parties. Even if the Court had applied the statutory trust, the materialman in that case would have been the beneficiary of the trust fund, not the trustee. After the funds were paid to him and were used for general business purposes, tracing would have been impossible. Neither the common law of Michigan nor the statutory trust imposes a duty on the materialmen as beneficiaries to apply the payment by the contractor to current work rather than prior indebtedness in the absence of any direction to do so. It would have been the responsibility of the contractor both as trustee under the statutory trust and as a contracting party under Michigan common law to direct the application of the funds.
 
 
 11
 We believe, therefore, that the language in the General Insurance opinion stating that the builders trust statute is inapplicable to public projects was unnecessary, and we decline to follow it.[5] This language was based on dicta from a prior Michigan case, Club Holding Co. v. Flint Citizens Loan and Investment Co., 272 Mich. 66, 261 N.W. 133 (1935), which held that Michigan Builders Trust Fund Act does not create a private, civil right of action. The Club Holding case was overruled in B. F. Farnell Co. v. Monahan, 377 Mich. 552, 141 N.W.2d 58 (1966), which established that the statute does give rise to a private right of action. We do not believe the Club Holding case is viable authority in Michigan now, and Michigan courts have not been called upon to rule upon the question of the applicability of the statute in the context of a public construction project.[6]
 
 
 12
 The only reason given in the General Insurance case for not applying the statutory trust to public projects is not convincing. The opinion states that the statutory requirement that contractors on public projects provide a payment bond protects subcontractors and materialmen and makes the statutory trust unnecessary for their protection on public projects. 482 F.2d at 860. But in order for subcontractors and materialmen on public projects to establish their rights to payment from the surety under the statutory payment bond, they must perfect their claims and file notice as if they were perfecting a mechanic's lien.[7] The main purpose of the Michigan statutory trust, as our opinions in General Insurance and Selby recognized, was to provide a better remedy than those provided by the mechanics lien and similar state laws. We were in error in stating in General Insurance that, under Michigan law, subcontractors and materialmen are better protected under the statutory payment bond applicable to public construction projects than under the mechanics lien laws applicable to private jobs.
 
 
 13
 The facts of the instant case undermine the assumption on which the General Insurance dicta were based, the assumption that aggrieved materialmen on public jobs do not need the trust fund remedy because they can rely on the payment bond statute. Here, the materialmen have foregone their right to recover on the payment bond. Confident in their belief that the funds received from M & K were theirs to keep, the materialmen had no apparent need to file the appropriate notices which are conditions precedent to recovery from the bond. Indeed, Klochko voluntarily dismissed a garnishment proceeding against M & K when the direct payment plan was consummated.
 
 
 14
 Furthermore, it is clear the Club Holding's dicta that the Michigan Trust Fund Act does not apply to public projects were based on an assumption that any civil remedy provided by the statute would be in the nature of a mechanic's lien. 272 Mich. at 72, 261 N.W. at 135. Since it was, and is, "well-understood and established" that it is contrary to public policy to allow private liens on public property, the Club Holding court declined to recognize the civil remedy in a public project. Id. Since Club Holding, however, it has become apparent that the interest created by the Michigan trust statute is not a lien on property.[8] Rather it is an equitable interest in funds paid out by the owner and in no way encumbers the owner's property. Thus, the policy not to allow mechanics' liens on public property, which lay underneath the Club Holding and General Insurance dicta, does not apply to the Michigan Builders Trust Fund Act. Recognition of a civil remedy under the statute in a public project would in no way threaten to encumber the public owner's property. On the contrary, the trust fund act serves to prevent encumbrances of any kind because it is an alternative to the lien law.
 
 
 15
 Accordingly, the building construction funds due the bankrupt subcontractor in this case on both the private and public construction projects were subject to the Michigan Builders Trust Fund Act. The materialmen owned the equitable interests in the funds. These equitable interests were therefore not the property of the bankrupt subcontractor under § 70 of the Bankruptcy Act, and the payments to the materialmen within four months of bankruptcy were not preferential transfers under § 60 of the Bankruptcy Act. Consequently, the judgment of the district court must be reversed. Appellate costs are taxed against appellee.
 
 
 16
 LIVELY, Circuit Judge, dissenting.
 
 
 17
 I respectfully dissent. The majority opinion seeks to avoid the impact of this court's decision in General Insurance Company of America v. Lamar Corporation, 482 F.2d 856 (6th Cir. 1973), by stating that the language in that opinion which holds the builders' trust act inapplicable to public projects was unnecessary to the decision. As I read General Insurance Company v. Lamar Corporation, its specific holding is the very language which the majority opinion treats as unnecessary.
 
 
 18
 The opening paragraph in General Insurance Company of America v. Lamar Corporation is:
 
 
 19
 This appeal presents primarily the question whether under the Michigan Building Contract Fund Act of 1931, M.C.L.A. §§ 570.151-570.153, money paid to a contractor performing a public project constitutes a trust fund for the payment of subcontractors and materialmen for labor and material furnished on that project. We determine that it does not and reverse the judgment of the district court.
 
 
 20
 482 F.2d at 856-57.
 
 
 21
 After setting forth the facts of the case and noting that Michigan law applies, the court stated the issue as follows:
 
 
 22
 The principal issue of Michigan law for our consideration is whether the Michigan Building Contract Fund Act applies to public as well as to private projects.
 
 
 23
 482 F.2d at 858.
 
 
 24
 The second issue in General Insurance Company (constructive trust), which the majority now says was sufficient basis for the decision, was never reached by this court. Indeed, the court stated, "Appellee does not press this theory on appeal, with good reason in our opinion, . . . ." 482 F.2d 861. This court decided but one question in General Insurance Company that the Michigan builders' trust act does not apply to public projects. This decision was based upon a careful analysis of Michigan law which I consider sound.
 
 
 25
 The majority opinion states, "Michigan courts have not been called upon to rule upon the question of the applicability of the statute in the context of a public construction project." This may be literally true. However, in National Bank of Detroit v. Eames & Brown, Inc., 396 Mich. 611, 242 N.W.2d 412 (1976), the Supreme Court of Michigan quoted Judge McCree's language from General Insurance Company in describing the purpose of the builders' trust fund act. 396 Mich. at 619-20, 242 N.W.2d at 415-16. The Michigan court, after summarizing several of its own holdings then stated:
 
 
 26
 The purpose of the Act is to create a trust fund for the benefit of materialmen and others under private construction contracts.
 
 
 27
 396 Mich. at 622, 242 N.W.2d at 417. (emphasis added).
 
 
 28
 I can perceive no valid reason or authority for departing from a holding of this court subsequently approved by the highest court of Michigan in a matter clearly controlled by Michigan law. I would affirm the judgment of the district court insofar as it holds that the Michigan builders' trust fund act has no application to public construction projects.
 
 
 
 [1]
 Section 60 of the Bankruptcy Act defines preference as "a transfer . . . of any of the property of a debtor . . . for . . . an antecedent debt, made . . . while insolvent and within four months" of bankruptcy, the effect of which will enable the "creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C. § 96 (1976)
 
 
 [2]
 "In the building construction industry, the building contract fund paid by any person to a contractor, or . . . to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, (and) contractors, laborers, subcontractors or materialmen . . . ." Mich.Comp.Laws Ann. § 570.151 (1967)
 
 
 [3]
 Section 70 provides that the trustee in bankruptcy shall be "vested by operation of law with . . . title" to all the "property" of the bankrupt
 
 
 [4]
 See note 2, Supra, for the text of the Act
 
 
 [5]
 The dissenting opinion makes the point that according to the express language of the General Insurance opinion the "specific holding" of the case is that the Michigan statutory trust does not apply to public projects. The dissent accurately states that we treat this "very language" as dicta, and we find instead that language which the General Insurance opinion characterized as dicta is in fact the holding of the case. Our method of analysis, however, is well within the common law tradition. We believe that the General Insurance opinion reaches the correct result but that its reasoning is faulty. The court should have rested its decision on different grounds
 
 
 [6]
 Our dissenting brother correctly states that the Michigan Supreme Court in National Bank of Detroit v. Eames and Brown, 396 Mich. 611, 622, 242 N.W.2d 412, 417 (1976), a case involving a private construction project, said that the Act creates a statutory trust "under private construction contracts." But we do not read the opinion as committing the courts of Michigan to a rule that the statutory trust applies "only" to private construction projects, and not to public projects. The court had no reason to reach that question in the National Bank of Detroit case and did not discuss it
 
 
 [7]
 Compare the Michigan mechanics lien law, Mich.Comp.Laws Ann. § 570.1 (1967) ("Every person . . . who shall furnish any labor or materials in or for (any building) . . . shall have a lien therefor upon such (building) . . . Provided, That (the materialman) shall within 90 days after furnishing the first of such material . . . serve on the owner . . . a written notice") With the public construction payment bond statute, Mich.Comp.Laws Ann. § 129.207 ("A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material . . . served on the principal contractor a written notice . . . and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant . . . supplied the last of the material . . . .")
 
 
 [8]
 Selby, supra; National Bank of Detroit v. Eames & Brown, 396 Mich. 611, 242 N.W.2d 412 at 419 (Coleman, J., concurring) (1976); B. F. Farnell Co. v. Monahan, 377 Mich. 552, 141 N.W.2d 58 (1966)