In re Michael R. SIGLER, Debtor.

Bill RIDEN, Glenda Diann Riden and Joe A. Rickard, Plaintiffs,

v.

Michael R. SIGLER, Defendant.

In re Loeta TOW, Debtor.

Bill RIDEN, Glenda Diann Riden and Joe A. Rickard, Plaintiffs,

v.

Loeta TOW, Defendant.

Bankruptcy Nos. 95–40785(7)2, 95–40786(2)7.
Adversary Nos. 95–4061, 95–4060.

United States Bankruptcy Court, W.D. Kentucky.

May 17, 1996.

Harry L. Mathison, Henderson, KY, for Defendants/Debtors.

Steve Robey, Providence, KY, for Plaintiffs.

## *MEMORANDUM–OPINION*

J. WENDELL ROBERTS, Bankruptcy Judge.

The two Debtors in this action are Michael Sigler and his Mother, Loeta Tow, they having filed Chapter 7 Petitions in this Court on August 31, 1995. Both were involved in a construction business known as S & S Contractors ("S & S"), which is now defunct. In the course of that business, S & S incurred debts to the three Plaintiffs in this action, Bill and Glenda Diann Riden ("The Ridens") and Joe Rickard ("Rickard"). Plaintiffs filed this adversary proceeding challenging the dischargeability of the debts pursuant to 11 U.S.C. § 523(a)(4), alleging that the Debtors engaged in defalcation while acting in fiduciary capacity.

This matter came on for trial on May 6, 1996. Having considered extensive testimony and exhibits introduced at trial, as well as the arguments of counsel for both parties, this Court finds that the Debtors did not engage in a defalcation while acting in a fiduciary capacity. Accordingly, this Court holds that the debts at issue are dischargeable, as the Plaintiffs have failed to meet their burden of proof under § 523(a)(4).

The Findings of Fact and Conclusions of Law are set forth as follows.

## *FINDINGS OF FACT*

The two Debtors are mother and son. Greg Sigler, who is not a Defendant in this action, and his brother, Michael R. Sigler, were partners in a general partnership known as S & S Contractors. Through that business, they improved and constructed houses in Providence, Kentucky, and the surrounding area. Their mother, Loeta Tow, was the part-time bookkeeper for the business.

There was no formal or written partnership agreement. This fact has created some confusion with regard to the nature of Ms. Tow's interest in the business, but is not, however, decisive to the holding of this Opinion.

On September 22, 1994, Rickard entered into a contract with S & S for the construction of a house. The contract provided for a total purchase price of $47,488.00, and of that amount, Rickard paid S & S $30,200.00. The Contract failed to provide that the money received by S & S was to be used first to pay for materials and labor, although S & S had that duty statutorily.

On September 27, 1994, a similar contract was executed between S & S and the Ridens. The contract with the Ridens called for a total purchase price of $52,200.00. They paid S & S $39,800.00 of that amount.

In both instances, the Debtors failed to use the money paid by the Ridens and Rickard for the construction of their respective houses. Both the Ridens and Rickard were ultimately forced to expend additional money to complete the work and to pay the materialmen and subcontractors who furnished materials and labor for S & S.

The Ridens have alleged damages in excess of $42,000.00. Rickard has alleged damages in excess of $84,000.00.

S & S Construction has ceased doing business and has no assets. It has not, however, filed for bankruptcy.

### CONCLUSIONS OF LAW

■ The Ridens and Rickard seek to have their debts declared nondischargeable under 11 U.S.C. § 523(a)(4), on the basis that the Debtors engaged in a defalcation while acting in a fiduciary capacity. That section provides:

A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt—

(4) For fraud or defalcation while acting in a fiduciary capacity. . . .

"Defalcation," as used in the context of § 523(a)(4), "refers to a failure to produce funds entrusted to a fiduciary and applies to conduct which does not necessarily reach the level of 'fraud,' or 'embezzlement' or 'misappropriation.'" 3 *Collier's on Bankruptcy* ¶ 523.14[1][b] at 523–111 (15th Ed.1995); *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993); *Holmes v. Kraus,* 37 B.R. 126 (Bankr. E.D.Mich.1984). Defalcation is an extremely broad term. It includes deficits which result from the breach of a fiduciary duty, even if the breach was neither intentional nor committed in bad faith. *In re Johnson,* 691 F.2d 249, 251, 254–57 (6th Cir.1982).

■ However, to come within the scope of § 523(a)(4), the defalcation must have occurred while the debtor was acting in a fiduciary capacity. *Johnson,* 691 F.2d at 251; *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). As used in that section, "the term 'fiduciary' applies *only to express or technical trusts* and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *Johnson,* 691 F.2d at 251; *Accord Davis,* 293 U.S. at 328, 55 S.Ct. at 151; *Quaif,* 4 F.3d at 950. Accordingly, if the Plaintiffs are to recover under the § 523(a)(4) defalcation theory, they must establish the existence of an express or technical trust.

■ State law must be consulted to determine when a trust relationship exists. *Johnson,* 691 F.2d at 251; *Runnion v. Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *Angelle v. Reed,* 610 F.2d 1335 (5th Cir.1980). In this case, the Plaintiffs assert that the relevant state law which creates a trust is found at K.R.S. 376.070. That statute provides, in part:

(1) Any contractor, architect or other person who builds, repairs or improves the property of another under such circumstances that a mechanics' or materialman's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.

K.R.S. 376.070(1).

Unfortunately, there has been much judicial confusion regarding the issue of whether K.R.S. 376.070 creates a trust, either express

or implied. There is a long history of both state and federal cases which have addressed this issue and which have reached different and often conflicting results. Accordingly, this Court finds it useful at this juncture to set forth a historical overview of the line of cases addressing K.R.S. 376.070.

Our overview begins with the 1978 Kentucky Court of Appeals case, *Blanton v. Commonwealth*, 562 S.W.2d 90 (Ky.App. 1978). Upon reviewing K.R.S. 376.070, the *Blanton* court held that it imposed "a legal duty" upon a building contractor to pay in full all claims for materials and labor involving a particular job out of the payments received from the property owner who has contracted for the work to be performed. *Id.* at 92. The *Blanton* court went on to hold that failure of a building contractor to comply with this legal obligation was sufficient to support a felony conviction under K.R.S. 514.070(1) for theft by failure to make a required disposition of property. *Id.*

The *Blanton* case did not, however, address the trust issue. That is significant for our purpose of a K.R.S. 376.070 discussion because it was subsequently relied upon about eight years later by the United States District Court for the Eastern District of Kentucky in finding that K.R.S. 376.070 supports a trust fund theory. *Commonwealth of Kentucky v. Laurel County*, 805 F.2d 628 (6th Cir.1986), *cert. denied*, 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 36 (1987). The Sixth Circuit reversed the District Court's holding, noting that the *Blanton* case did not hold that K.R.S. 376.070 creates either an express trust or a trust by implication. *Id.* at 633. *Blanton* did not even discuss the trust issue and certainly did not rest its finding of a criminal violation on a trust theory. *Id.* In fact, there was no suggestion of a trust theory even having been considered by that court. *Id.*

Despite the Sixth Circuit's rather strong condemnation of the District Court's reliance on *Blanton* in finding that K.R.S. 376.070 supports a trust fund theory, the Plaintiffs in the case at bar rely heavily on the *Blanton* case to support that same proposition. For the reasons espoused by the Sixth Circuit in the *Laurel County* case, 805 F.2d at 633, this Court finds the Plaintiffs' reliance on *Blanton* is misplaced.

The precise issue of whether K.R.S. 376.070 creates a trust was actually considered for the first time in 1980, several years before *Laurel County*, by the Bankruptcy Court for the Western District of Kentucky in *In re D & B Electric, Inc.*, 4 B.R. 263 (Bankr.W.D.Ky.1980). *D & B* held that K.R.S. 376.070 creates a trust for the benefit of unpaid materialmen and subcontractors who have provided labor and/or materials for a particular project. *Id.* at 268. The Bankruptcy Court concluded that when money is paid to a contractor by the landowner who contracted for work to be performed on his land, that money is held in trust by the contractor for the benefit of the materialmen and subcontractors. *Id.*

In reaching this holding, the Bankruptcy Court relied upon two cases decided under Michigan law, *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979) and *Parker v. Klochko Equipment Rental Co.*, 590 F.2d 649 (6th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). However, the Michigan law regarding materialmen upon which the *Selby* and *Parker* cases were decided is distinguishable from K.R.S. 376.070. The Michigan Statute expressly and in unequivocal terms creates a trust. Mich.Comp.Laws § 570.151, Mich.Stat.Ann. § 26.331. That statute reads as follows:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, *shall be considered by this Act to be a trust fund*, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and *the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.*

Mich.Comp.Laws § 570.151, Mich.Stat.Ann. § 26.331 (emphasis added).

By contrast, K.R.S. 376.070 does not contain language which creates such a trust fund. For this reason, the Sixth Circuit in the *Laurel County* case, discussed above, expressly rejected the holding of *D & B* in a

decision that is severely critical of the analysis adopted by the *D & B* Court. *Laurel County,* 805 F.2d at 633–34. The Sixth Circuit harshly characterized *D & B* 's reliance upon the *Selby* and *Parker* cases as being "fundamentally flawed." *Id.* at 634.

In the intervening years between *D & B* and *Laurel County,* the Bankruptcy Court sitting in the Western District of Kentucky revisited the trust issue as it relates to K.R.S. 376.070 on two occasions. It addressed the issue in 1982 in *In re Allgeier & Dyer, Inc.,* 18 B.R. 82 (Bankr.W.D.Ky.1982), and again in 1985, in *In re Dave Thomas Co.,* 51 B.R. 66 (Bankr.W.D.Ky.1985). While *D & B* was decided by Judge Deitz, *Allgeier* and *Dave Thomas* were decided by Judge Bland and Judge Brown, respectively. Both cases declined to adopt the rationale of *D & B,* rejecting its determination that K.R.S. 376.070 creates a trust. Both *Allgeier* and *Dave Thomas* note that the two Michigan cases relied upon by *D & B* involved the Michigan Statute which expressly creates a trust. *Allgeier,* 18 B.R. at 85; *Dave Thomas,* 51 B.R. at 69. "There is no comparable Kentucky law which compels an application of the trust fund theory here." *Allgeier,* 18 B.R. at 85; *Dave Thomas,* 51 B.R. at 69. The Bankruptcy Court in both cases rejected the earlier *D & B* decision, holding:

> For these reasons ... the court is constrained to find that the reliance placed on *D & B Electric,* supra, is misplaced.

*Allgeier,* 18 B.R. at 85; *see also Dave Thomas,* 51 B.R. at 69; and *Georgia Pac. Corp. v. Sigma Serv. Corp.,* 712 F.2d 962, 967–72 (5th Cir.1983).

It is also interesting to note that during this same timeframe, Judge Deitz, who authored the *D & B* decision, considered the trust issue again from a slightly different angle and limited its holding. *See In re Glover Constr. Co.,* 30 B.R. 873 (Bankr. W.D.Ky.1983). *D & B* involved a dispute over the legal rights between a subcontractor and a supplier with regard to a payment which had been made for supplies delivered by the supplier. 4 B.R. at 263. *D & B* held that the payment was held in trust for the benefit of the supplier pursuant to K.R.S. 376.070. *Id.* In the *Glover* case, however,

Judge Deitz declined to extend the trust fund theory to determine the rights of a *general contractor* in monies held by the property owner. 30 B.R. at 873.

Judge Deitz revisited the issue of whether K.R.S. 376.070 creates a trust fund one final time in 1986, in *In re Weedman,* 65 B.R. 288 (Bankr.W.D.Ky.1986). The *Weedman* case involved facts quite similar to those involved in the case at bar. The plaintiff, like the Plaintiffs in this action, contracted with the debtor who, like the Debtors in this case, was in the business of constructing houses. The debtor purchased over $5,000 worth of supplies from a lumber company for use in the construction of the plaintiff's home. The plaintiff paid the debtor the full purchase price, however, the debtor, like the Debtors in this case, failed to pay the lumber company for the materials supplied. Judge Deitz again held in the *Weedman* case that "K.R.S. 376.070 imposes an express trust upon contractors and that misuse of funds from such trust is actionable under Section 523(a)(4) of the Bankruptcy Code." 65 B.R. at 291.

The last case to consider the trust issue as it relates to K.R.S. 376.070 was rendered by the Sixth Circuit at approximately the same time as the *Weedman* case was decided. *Laurel County,* 805 F.2d at 628 (discussed above). Both cases were decided within a time frame of six weeks, in the fall of 1986. The *Weedman* case was decided first; consequently, Judge Deitz did not have the benefit of the guidance provided by the Sixth Circuit on this issue.

As set forth above in our discussion of the *Blanton* case and the *D & B* case, the United States District Court for the Eastern District of Kentucky in deciding the *Laurel County* case relied on the *Blanton* and *D & B* cases in holding that K.R.S. 376.070 creates a trust for the benefit of unpaid materialmen. 805 F.2d at 628. The Sixth Circuit reversed that holding and in a rather harsh opinion pronounced the District Court's reliance on *Blanton* and *D & B* as being "fundamentally flawed." *Id.* at 634. The Sixth Circuit's comments regarding the District Court's misplaced reliance on those cases are addressed in detail above in this Court's analysis of the *Blanton* and *D & B* cases. In

short, however, the Sixth Circuit case noted that the *Blanton* Court did not even consider the trust fund theory and certainly did not base its holding that violation of K.R.S. 376.070 would support a criminal conviction on such a theory. *Id.* at 633–34. With regard to *D & B*, the Sixth Circuit held that the reasoning underlying that case's holding that K.R.S. 376.070 supports a trust theory is erroneous due to the fact that it relied on two cases, *Selby* and *Parker,* decided under Michigan law which expressly creates a trust. *Id.* Consequently, the Sixth Circuit concluded that K.R.S. 376.070 does not create a trust. *Id.*

■ In attempting to sort out the confusion caused by the myriad of cases addressing the issue of whether K.R.S. 376.070 creates a trust relationship, this Court has looked for guidance to another Sixth Circuit case, *In re Johnson,* 691 F.2d 249 (6th Cir. 1982). The *Johnson* case does not discuss K.R.S. 376.070. However, it discusses in great detail the requirements necessary for the finding of a trust for purposes of § 523(a)(4), which is the provision relied upon by the Plaintiffs in this case in seeking a declaration of nondischargeability of the debt owed to them. For purposes of determining whether a state statute creates a trust, the Sixth Circuit through the *Johnson* decision has established a three-part test. *Id.* at 252–53. To create a § 523(a)(4) fiduciary relationship, the statute must: (1) define the trust res; (2) define the trustee's fiduciary duties; and (3) impose a trust on the funds prior to the act which created the debt. *Id.* at 253.

While the *Weedman* case, 65 B.R. at 288, incorporated the *Johnson* three-part test, it appears that it misapplied the third prong of the test when considering whether K.R.S. 376.070 creates a trust. *Weedman,* 65 B.R. at 291. The *Johnson* case elaborates at great length on the requirements entailed by this prong of the test, making it abundantly clear that the requisite trust relationship "must exist *prior to* the act creating the debt and *without reference to it* . . . State statutes which impose a trust ex-maleficio are not within the scope of Section 17(a)(4) [the predecessor to § 523(a)(4) ] since such trusts

only arise upon an act of misappropriation." *Johnson,* 691 F.2d at 252; *Accord Runnion v. Pedrazzini,* 644 F.2d 756, 759 (9th Cir. 1981); *Angelle v. Reed,* 610 F.2d 1335, 1341 (5th Cir.1980); *In re Thornton,* 544 F.2d 1005, 1007 (9th Cir.1976). Accordingly, the circuits which have addressed with statutes imposing only criminal or other penalties on a general contractor have refused to find a fiduciary relationship within the scope of § 523(a)(4) and its predecessor, § 17(a)(4) of the Bankruptcy Act. *Johnson,* 691 F.2d at 253; *Pedrazzini,* 644 F.2d at 759; *Angelle,* 610 F.2d at 1341; *Thornton,* 544 F.2d at 1007; *See also In re Dloogoff,* 600 F.2d 166 (8th Cir.1979). "There the statutory trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it even though a technical or express trust may exist at that time." *Johnson,* 691 F.2d at 253; *Accord Pedrazzini,* 644 F.2d at 759; *Angelle,* 610 F.2d at 1341; *Thornton,* 544 F.2d at 1007; *Dloogoff,* 600 F.2d at 166.

Unfortunately for the Plaintiffs in this action, who now face the unpleasant and arguably inequitable hardship of paying the amount owed to the unpaid materialmen *twice*—once to the Defendant, Michael R. Sigler, a partner in S & S who violated his legal obligations to make payment to the materialmen and again to the unpaid materialmen who have performed—it appears that if in fact K.R.S. 376.070 does impose a trust, it does so ex-maleficio, i.e., upon the wrongful act of misappropriation. Such trust does not exist prior to such a misappropriation or without reference to it. This conclusion is based on a reading of K.R.S. 376.070 in conjunction with K.R.S. 376.990(2). While K.R.S. 376.070 imposes a duty upon a building contractor to apply payments from the property owner to the claims of the subcontractors and materialmen who have provided labor and materials, K.R.S. 376.990(2) enforces that duty by imposing a criminal penalty in the event that a contractor fails to comply with those obligations. Accordingly, K.R.S. 376.990(2) converts K.R.S. 376.070 into the nature of a criminal statute and any trust thereby created only arises upon the contractor's misappropriation of funds.

Based on this finding in conjunction with the Sixth Circuit's pronouncement in *Laurel County* that K.R.S. 376.070 does not create a trust, this Court must, although somewhat reluctantly, reach the holding that K.R.S. 376.070 does not support a trust theory for purposes § 523(a)(4).

If a trust in favor of materialmen and subcontractors is to be established, it must come from the Kentucky Legislature, which has enacted numerous other trust statutes. Just a few examples include: (1) K.R.S. 304.9–400, which provides that premiums collected by an insurance agent shall be held in trust; (2) K.R.S. 164A.800, which creates a mining and minerals trust fund; and (3) K.R.S. 139.340, which obligates every retailer engaged in business in this state to collect sales tax from the purchasers of tangible personal property and to hold such taxes in trust for the benefit of the state. In each instance, the Legislature has been clear in its establishment of the trusts involved, using express and unequivocal language and leaving no doubt with regard to whether a trust has been created. Kentucky's Insurance Code expressly states that insurance premiums collected by an insurance agent "shall be held by the agent or solicitor in a *fiduciary capacity* and shall *not* be misappropriated or converted to his own use or legally withheld by the agent or solicitor." K.R.S. 304.9–400 (emphasis added). Kentucky's Mining and Minerals Trust Fund Act utilizes equally strong language in its establishment of a trust. It provides, "There is hereby created a mining and minerals *trust fund,* hereinafter referred to as the "fund." K.R.S. 164A.800 (emphasis added). This Court's final example involving Kentucky's Sales and Use Taxes Statute likewise invokes unequivocal language in establishing a trust. That statute states that all sales taxes "collected by the retailer under this section *shall be deemed to be held in trust for and on account of the Commonwealth of Kentucky.*" K.R.S. 139.340(1) (emphasis added).

This Court finds it extremely persuasive that such language is absent from the materialman statute at issue in this case, K.R.S. 376.070. Kentucky Revised Statute 376.070 simply directs the payment of certain monies.

It directs contractors to make payments to subcontractors and materialmen who have performed services or supplied labor from the proceeds of payments made by the landowner. The statute does not require contractors to "hold" funds for the benefit of any person, or that the contractor is to act in a "fiduciary capacity." It does not utilize the term "trust" or even the term "fund." It simply directs the course of payments received, and nothing more. K.R.S. 376.070. While the effect of this statute is extremely unfortunate for the landowner, any relief must come from the Legislature. This Court cannot create an express trust where neither the Legislature nor the parties by contract have designated one to exist.

Consequently, finding that no trust exists under the facts of this case, this Court must conclude that the Plaintiffs have failed to meet their burden of proof under § 523(a)(4), as that Section of the Bankruptcy Code requires the presence of an express trust in order for a debt to be held nondischargeable on the grounds that the Debtor engaged in a defalcation while acting in a fiduciary capacity.

### CONCLUSION

For the above stated reasons, this Court by separate Order holds that the debts owed by the Debtors, Michael Sigler and Loeta Tow, to the Plaintiffs, Bill and Glenda Diann Riden and Joe Rickard, are dischargeable, as the Plaintiffs have failed to sustain their burden of proof under § 523(a)(4).