In re Wilson David PENICK d/b/a W. Penick Electrical Construction, Inc.

PEOPLES BANK & TRUST COMPANY OF HAZARD, a Kentucky Banking Corporation, Plaintiff,

v.

Wilson David PENICK d/b/a W. Penick Electrical Construction, Inc., Defendant.

Bankruptcy No. 95–70169.
Adv. No. 95–7064.

United States Bankruptcy Court,
E.D. Kentucky,
Pikeville Division.

July 31, 1996.

Stanton L. Cave, Lexington, Kentucky, for plaintiff.

Matthew B. Bunch, Lexington, Kentucky, for defendant.

### MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court having been submitted on the record. Pursuant to an Order Rescheduling Trial entered herein on April 17, 1996, this matter had been set for trial on July 15, 1996. However, after a hearing on the plaintiff's Motion for Summary Judgment conducted on June 27, 1996, the Court agreed to consider taking the matter under submission upon stipulations. The parties filed their Joint Stipulations on July 3, 1996, and the Court entered an Order setting aside the scheduled trial and taking the matter under submission on July 5, 1996. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The plaintiff initiated this matter by filing its Complaint on November 17, 1995, alleging that a debt owed to the plaintiff was nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The defendant filed his Answer on December 5, 1995. The trial of this matter was originally set for April 18, 1996, but the plaintiff requested a continuance, alleging that the defendant was not cooperating in attempts to complete discovery.

The plaintiff filed a Motion to Compel Responses to Document Requests and Interrogatories and to Shorten Time on April 3, 1996. The defendant filed a Motion to Continue Discovery Deadline and Dispositive Motion Deadline on April 4, 1996, and a Response to the plaintiff's Motion on April 8, 1996. The Order Rescheduling Trial was entered as set out above, and an Order Sustaining Peoples Bank's Motion to Compel was entered on April 26, 1996. The defendant filed an Objection to Proposed Order and Emergency Motion to Reconsider the Court's Ruling on the same date. An Order Overruling Debtor's Objection was entered on May 6, 1996. The defendant filed a Motion to Compel Discovery and to Extend Deadlines on May 31, 1996.

The plaintiff filed its Motion for Summary Judgment on June 7, 1996. The defendant filed his Response and Cross–Motion for Summary Judgment on June 24, 1996. The plaintiff filed a Response to the Cross–Motion for Summary Judgment on June 27, 1996.

The Joint Stipulation of Facts sets out the following:

"1. The Debtor filed a Chapter 7 bankruptcy petition seeking bankruptcy relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy

Court, Eastern District of Kentucky, Pikeville Division, Case Number 95–7–0169, on March 20, 1995.

2. At all relevant times, the Debtor believed that he was, as acted as, the sole officer, director and shareholder of W. Penick Electrical Construction Co., Inc.

3. Articles of Incorporation were never filed with the Kentucky Secretary of State, or in any other state, for W. Penick Electrical Construction Co., Inc.

4. W. Penick Electrical Construction Co., Inc. was engaged in the electrical construction business in eastern Kentucky, and surrounding states.

5. At all relevant times, all of the electrical construction business, in which the Debtor, was involved, was in the name of W. Penick Electrical Construction Co. Inc. except as provided in paragraphs 15 through 21 hereof.

6. At all relevant times, W. Penick Electrical Construction Co., Inc. prepared and filed state and federal corporate tax returns as a separate corporate entity.

7. W. Penick Electrical Construction Co., Inc. had its own employer identification number being 61–00962526.

8. From 1990 through 1994, the Debtor withdrew money via "corporate" checks from the general checking account of W. Penick Electrical Construction Co., Inc. in irregular amounts for use apart from the electrical construction business.

9. The withdrawals were entered as loans or "shareholder receivables" on the business and financial records of W. Penick Electrical Construction Co., Inc. and are listed as such on the schedules of the corporate tax returns of W. Penick Electrical Construction Co., Inc.

10. According to the tax returns of W. Penick Electrical Construction Co., Inc. the "shareholder receivables" (hereinafter the "Transfers") were listed as follows:

$165,439.89 for tax year 1990;

$331,085.00 for tax year 1991;

$394,429.00 for tax year 1992;

$481,203.00 for tax year 1993; and

$520,265.00 for tax year 1994.

11. There were and are no promissory notes, no repayment schedules, no security interests, no mortgages, no payments of interest, no payments of principal, no maturity date(s), no history of borrowing and repayment, no history of dividends or distributions, no corporate resolutions and no collection actions in connection with the Transfers.

12. On or about February 22, 1996, the Debtor commenced an adversary proceeding in this Court, by filing a complaint for a declaratory judgment to determine the amount and legality of personal income tax liability associated with the Transfers, styled *Wilson David Penick, d/b/a Wilson Penick, Inc. a/k/a W. Penick Electrical Construction Co., Inc. vs. United States of America Internal Revenue Service, Commonwealth of Kentucky Revenue Cabinet, Commonwealth of Kentucky Cabinet for Human Resources, City of Hazard and Perry County,* Adversary Case No. 96–7006 (the "IRS Complaint").

13. In paragraph five of the IRS Complaint, the Debtor avers that: "The Debtor/Plaintiff owned and operated a business during the approximate calendar years of 1985 to 1995 named Wilson Penick, Inc., a Kentucky corporation, a/k/a W. Penick Electrical Construction Co., Inc. with a business mailing address of P.O. Box 7667, Hazard, Kentucky 41702".

14. At all relevant times, Wilson Penick, Inc. was a validly existing Kentucky corporation.

15. Peoples Bank made its first loan to W. Penick Electrical Construction Co., Inc. on or about September 20, 1985, in the amount of $20,000. Later, on December 3, 1986, Peoples Bank made another loan to W. Penick Electrical Construction Co., Inc. in the amount of $100,000. As directed by the Debtor, proceeds from these loans were deposited directly into a general checking account in the name of W. Penick Electrical Construction Co., Inc.

16. Beginning on April 28, 1987, through April 15, 1991, Peoples Bank made a series of ten (10) loans to Wilson Penick, Inc. and/or W. Penick Electrical Construction Co., Inc.

totaling $333,754.16. As directed by the Debtor, proceeds from these loans were deposited directly into a general checking account in the name of W. Penick Electrical Construction Co., Inc.

17. Each promissory note executed from April 28, 1987 through April 15, 1991 was executed in the name of Wilson Penick, Inc., except for one promissory note dated March 16, 1990, in the amount of $37,500, which was executed in the name of W. Penick Electrical Construction Co., Inc.

18. On January 21, 1992, the outstanding loans in the name of Wilson Penick, Inc. and the March 16, 1990 loan in the name of W. Penick Electrical Construction Co., Inc. were consolidated into one installment note in the amount of $333,754.16, which was executed in the name of Wilson Penick, Inc.

19. On May 20, 1992, a loan was made in the amount of $40,000, for which a promissory noted was executed in the name of Wilson Penick, Inc. As directed by the Debtor, proceeds from this loan were deposited directly into a general checking account in the name of W. Pennick Electrical Construction Co., Inc.

20. On March 18, 1993, another loan was made in the amount of $61,291.20, for which a promissory note was executed in the name of Wilson Penick, Inc. As directed by the Debtor, proceeds from this loan were deposited directly into a general checking account in the name of W. Penick Electrical Construction Co., Inc.

21. On June 17, 1993, all of the outstanding loans in the names of Wilson Penick, Inc. and W. Penick Electrical Construction Co., Inc., including the May 20, 1992 and March 18, 1993 loans were again consolidated into one installment note, in the amount of $410,536.69 (the "June Note"), which was executed in the names of Wilson Penick, Inc. and the Debtor.

22. No additional proceeds were advanced to Wilson Penick, Inc., W. Penick Electrical Construction Co., Inc. or the Debtor, individually, in connection with the consolidation and execution of the June Note.

23. W. Penick Electrical Construction Co., Inc. continued its routine electrical construction business until 1994 when one of its employees was fatally injured in a trucking accident. Thereafter, the United States of America Mine Safety & Health Administration began to more closely scrutinize the safety practices and precautions of W. Penick Electrical Construction Co., Inc. As a result, the Debtor did not consider it feasible, financially or otherwise, to remain in the electrical construction business and caused W. Penick Electrical Construction Co., Inc. to cease its operations in early 1995.

24. During all relevant times, and without taking into account the $520,265.00 in Transfers, Wilson Penick, Inc. and/or W. Penick Electrical Construction Co., Inc. was unable to satisfy its financial obligations to State Electric and Peoples Bank as those respective obligations became due."

The plaintiff's Motion for Summary Judgment contends that it is entitled to judgment as a matter of law that the debt owed to it by the debtor is nondischargeable pursuant to § 523(a)(4) because the debtor engaged in defalcation while acting in a fiduciary capacity. The plaintiff has stated that to except the debt from discharge it must demonstrate that the defendant occupied the role of fiduciary in regard to the plaintiff as a creditor of the corporation, that the withdrawals from the corporation were made while the defendant was acting as a fiduciary, and that the plaintiff was harmed as a result of the defendant's actions.

The first issue to be determined is whether the defendant met the definition of a fiduciary. The leading case in the Sixth Circuit on this subject is *In re Johnson,* 691 F.2d 249 (6th Cir.1982). There the court was interpreting § 17(a)(4) of the Bankruptcy Act, the predecessor of 11 U.S.C. § 523(a)(4). The court stated:

> The question of who is a fiduciary for purposes of section 17(a)(4) is one of federal law, although state law is important in determining when a trust relationship exists. .... The term 'fiduciary' applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. .... More-

over, the requisite trust relationship must exist prior to the act creating the debt, and without reference to it. (Cites omitted.) At pages 251–252. This Court must therefore discover the existence of a technical trust in order for the defendant to be considered a fiduciary, looking to state law to determine if a trust relationship exists. As set out in *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir.1985), state law "determines the nature of the property interest in question." At page 124.

■ Technical trusts are created by an agreement between the parties to impose a trust relationship, or by a statute that specifically imposes fiduciary obligations on a party. *See In re Howell,* 178 B.R. 730, 732 (Bkrtcy.W.D.Tenn.1995). In *Johnson* the technical trust was created by statute. The court held that:

[t]he Building Contract Fund Act satisfies the express or technical trust requirements of section 17(a)(4). The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute. The trust res is clearly defined as the monies paid by any person into the building contract fund. The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed priority scheme, not using funds for its own purposes so long as trust beneficiaries, laborers, subcontractors and materialmen remain unpaid. . . .

At pages 252–53.

The plaintiff looks to KRS 271B.6–400(3) to establish the trust relationship between the defendant and his creditors that would make him a fiduciary. It provides:

(3) No distribution shall be made if, after giving it effect:

(a) The corporation would not be able to pay its debts as they become due in the usual course of business; or

(b) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

This provision does not create a trust, notwithstanding any inferences that might be drawn from it concerning a corporate director's "fiduciary" duty to the corporation's shareholders.

The plaintiffs have not demonstrated that the requirements of *Johnson* do not continue to be good law in the Sixth Circuit. The majority of bankruptcy courts around the Circuit have consistently cited it with approval. Most recently, in *In re Sigler,* 196 B.R. 762 (Bkrtcy.W.D.Ky.1996), that court addressed the question of whether the Kentucky mechanics' and materialmen's lien statute, KRS 376.070, creates a trust so as to allow debts arising in that context to be found to be nondischargeable pursuant to § 523(a)(4).

The *Sigler* court held that

Kentucky Revised Statute 376.070. . . . directs contractors to make payments to subcontractors and materialmen who have performed services or supplied labor from the proceeds of payments made by the landowner. The statute does not require contractors to 'hold' funds for the benefit of any person, or that the contractor is to act in a 'fiduciary capacity.' It does not utilize the term 'trust' or even the term 'fund.' It simply directs the course of payments received, and nothing more. KRS 376.070. . . . This court cannot create an express trust where neither the Legislature nor the parties by contract have designated one to exist. Consequently, finding that no trust exists under the facts of this case, this Court must conclude that the Plaintiffs have failed to meet their burden of proof under § 523(a)(4), as that Section of the Bankruptcy Code requires the presence of an express trust in order for a debt to be held dischargeable on the grounds that the Debtor engaged in a defalcation while acting in a fiduciary capacity.

At page 768. This Court must come to the same conclusion, and find that the plaintiff herein has failed to meet its burden under

§ 523(a)(4) as well. The debt owed to the plaintiff by the defendant is not excepted from discharge pursuant to that statute. An order in conformity with this opinion will be entered separately.